IN THE MATTER OF THE APPEAL OF JOSEPH IRVING FROM THE DECISION OF THE BOARD OF REGISTRATION FOR THE ISLAND OF OAHU.

Submitted October 1, 1900.          Decided October 2, 1900.

Frear, C.J., Galbraith and Perry, JJ.

One who has no place of abode except on a steamer engaged in the inter-island trade is not a resident of a particular precinct within the meaning of the election laws, although the steamer when at Honolulu docks at a wharf in such precinct and Honolulu is her home port.

OPINION OF THE COURT BY GALBRAITH, J.

This cause is an appeal, permitted by statute, from the decision of the Board of Registration for the Island of Oahu, refusing to enter applicant's name upon the list of qualified voters in the sixth precinct of the fourth district of the Island of Oahu. The facts as admitted are as follows, to-wit:

"That the applicant is a citizen of the United States of America by naturalization and is over 21 years of age and was a resident in the Hawaiian Islands on and since August 12th, 1898, and has resided within the sixth precinct of the fourth district of the Island of Oahu for more than three months last past on board of the steamer "Iwalani" owned by the Inter-Island Steam Navigation Company, occupying a fixed and permanent room upon said steamer for seven months last past, the permanent berth of

said steamer being at the Inter-Island wharf, in Honolulu, Wai-kiki of Nuuanu street and within the sixth precinct aforesaid; that Honolulu is the home port of said steamer, trips being made therefrom to various other ports within the Territory of Hawaii, and said vessel having no fixed and permanent route, but travel-ing to different ports from time to time according to the exigen-cies of business; that while upon said trips out of the port of Ho-nolulu the applicant has no stopping place or residence whatso-ever upon the other islands or the various ports visited by said steamer; that applicant's residence is on said boat in said precinct and that applicant has no other residence or place of abode, and that he has no residence or place of abode on shore. That he ap-peared before the Board and demanded that his name be entered on the list of qualified voters for the sixth precinct of the fourth district and that his demand was denied."

The appellant contends that he possesses all of the qualifica-tions of a legal voter and is entitled, as a matter of right, to have his name entered on the list of voters for the precinct and district as demanded. While it is insisted, on behalf of the Board of Registration, that he does not possess all of the qualifications re-quired in Section 60 of the Organic Act, and particularly that he is disqualified under the requirements of subdivision two of said section which provides that, in order for any one to be a qualified voter, he must "have resided in the Territory for not less than one year preceding, and in the representative district in which he offers to register, not less than three months immediately pre-ceding the time at which he offers to register," in this that he has failed to show that he resides or has a residence in the sixth precinct in the fourth district, or in any other place in the Ter-ritory, and that he is not entitled under the law to registration.

The boundaries of the sixth precinct of the fourth district as set out in the statute are as follows, to-wit, "All that portion of said district comprised in Honolulu or Kona and bounded by Richards street, Beretania street, Nuuanu street and the harbor."

Now the question presented is—Do the facts above set out show the appellant to be a resident of the sixth precinct or to have "resided" therein for "not less than three months immediately preceding the time he offered to register"?

"Residence is the favorite term employed by the American legislator to express the connection between person and place, its exact signification being left to construction, to be determined by the context and apparent object sought to be attained by the enactment.  *  *  *  'Residence' when used in the statutes is generally construed to mean 'domicile.' In fact the great bulk of the cases of domicile reported in the American books are cases of statutory residence. This is especially true with regard to the subject of voting." Jacobs, Domicil, par. 75.

In the constitution of Pennsylvania there is the following provision in regard to voting: "In elections by the citizens every white freeman of the age of twenty-one years having resided in the state one year and in the election precinct where he offers to vote ten days immediately preceding such election," etc. The Supreme Court said in the case of *Chase v. Miller*, 41 Pa. 420, "But there must not only be a district to vote in, but there must be a residence therein for ten days next preceding the election. This is a part of the condition of suffrage. Undoubtedly the primary significance of the word 'residence' as used in the constitution is the same as domicil—a word which means the place where a man establishes his abode, makes the seat of his property, and exercises his civil and political rights."

The constitution of North Carolina provided among other qualifications for voters that "he must have resided in the state twelve months next preceding the election and ninety days in the county in which he offers to vote." "Residence," says the court, "as the word is used in this section in defining political rights, is, in our opinion, essentially synonymous with domicil, denoting a permanent as distinguished from a temporary dwelling-place. There may be a residence for a specific purpose as at a summer or winter resort, or to acquire an education, or some art or skill in which the animus revertendi accompanies the whole period of absence, and this is consistent with the retention of the original and permanent home, with all of its incidental privileges and rights. Domicil is a legal word and differs in one respect, and perhaps in others, in that it is never lost until a new one is acquired, while a person

may cease to reside in one place and has no fixed habitation else-where." And again, "This clause meets more especially the case of incoming persons who are not permitted to exercise political rights until after they have been in the state and county for the prescribed period." *Hannon v. Grizzard*, 89 N. C. p. 120.

Every man has had a residence at some period of his life. That place remains his legal residence until he has acquired another.

*Thorndike v. Boston*, 1 Met. 242; McCrary, Elections, por. 71; *French v. Sighty*, 9 Ind. 478; Pain, Elections, por. 45; *Moffett v. Hill*, 131 Ill. 239.

"Residence, therefore, is a question depending on fact and in-tention, and, if so, it may be applicable to a particular spot or a whole country. A person who wanders from country to country, with no intention of remaining fixedly anywhere, acquires no new residence. On the other hand, one who confines his wander-ings to a particular country or locality, but declines to fix himself upon some particular spot, can very properly be said to be a resi-dent of that country or locality. Home, domicil or residence may therefore include a spot or a wide area. Each of these words may be applied to a county, a precinct, a ward or a county or state." Dic'y. on Law of Domicil, p. 55.

"It is obvious that state residence and the district residence are of the same nature, and whatever is necessary to constitute one is essential to define the other." Fry's Election Case, 71 Pa. 306; 10 Am. Rep. 698.

For the purposes of this case it is not necessary to determine whether "residence" as used in Section 60 of the Organic Act is equivalent to domicil. However, from the authorities, we do reach the conclusion that a house of stone or brick or even of wood is not essential to enable one to become a resident of a pre-cinct and a qualified voter therein. He might live in a tent, in a grass hut or dwell out in the open, canopied by the "silent stars." But there must be some definite and permanent place designated and occupied in order to entitle one to clothe the same with the rights and privileges surrounding the residence, or domicil of an elector. Clearly one could not reside in a wagon or building on wheels and move the same from precinct to precinct and establish a residence in any voting precinct unless his wagon or

place of abode remained in the precinct the length of time required by law.

The record shows that the residence of the appellant for the past seven months has been on board of the steamer "Iwalani," in a "fixed and permanent room;" that this steamer is engaged in the inter-island trade, her home port is Honolulu and when here she is docked at a wharf in the harbor designated as one of the boundaries of the said sixth precinct.

It is clear from this statement that when the "Iwalani" goes to Lahaina or some other port that the "fixed and permanent room," the residence of the appellant, aboard the steamer goes also, and that his residence during the time the steamer is away is not at Honolulu and within the sixth precinct as claimed. To enable the appellant to successfully maintain such a claim there is wanting that essential element necessary to establish a residence, a permanent or fixed location.

In the very short time since the argument of this case, we have been able to find one decision that is certainly controlling and decisive of the case at bar. The facts are very similar except the appellant's residence, in that case, aboard the steamer, extended over a period of two years, and the Supreme Court of Maryland says, in part: "It is quite apparent, under the facts of the case, that the appellant never acquired a voting residence in the city of Baltimore, unless his alleged residence upon the steamer while temporarily lying at her pier at Light street wharf, in the City of Baltimore, gave him one." * * * "The next question then is, did the appellant acquire a voting residence in the City of Baltimore by residing upon the steamer in the manner as stated by him? Now the rule of law seems to be settled that a seaman or seagoing man retains his domicil of origin, although he is regularly employed on a steamer, unless by actual residence he acquires a domicil elsewhere. In *Thorndike v. Boston*, 1 Met. 245, Chief Justice Shaw states the rule thus: "If a seaman without family or property sails from the place of his nativity, which may be considered his domicil of origin, although he may return only at long intervals, or even be absent for many years, yet if he does

not, by some actual residence or other means, acquire a domicil elsewhere, he retains his domicil of origin." Other authorities are *Sherwood v. Judd*, 3 Bradf. 276; *Buoys v. Brewster*, 111 Mass. 385; *Long v. Ryan*, 30 Gratl. 718. And continuing the Maryland court says: "And this we think is the safe rule to be adopted and applied in cases similar to the one now under consideration." * * * "If a person could gain a voting residence by simply residing upon a steamboat, because it was temporarily fastened to a pier or wharf while discharging its freight and taking on its cargo, then one might acquire any number of residences and would have the right to register at either terminus of the steamer, or at any point where the steamer stops. "Residence," as contemplated by the framers of our constitution, for political or voting purposes, means a place of fixed present domicil. The object in prescribing residence as a qualification for the exercise of the right of suffrage says this court in *Shaeff v. Gilbert*, 73 Md. 70, is not merely for the purpose of identifying the voter, and as a protection against fraud, but also that he should become in fact a member of the community and, as such, have a common interest in all matters pertaining to its government. Residence upon a steamer like that claimed by the appellant has none of the characteristics of a fixed or permanent abode, within the meaning of our constitution as entitles a person to be registered as a qualified voter. If the contention of the appellant in this case was sustained, then a steamboat company could fix the legal residence of its employees who reside upon its steamers, by simply changing its pier or wharf." *Howard v. Skinner*, L. R. A. B. 40 pp. 753-754.

It follows that the contention of the appellant cannot be maintained for the reason that he has not established a voting residence in the precinct and that the question presented as hereinbefore stated must be answered in the negative.

The appeal is dismissed with costs.

*Kinney, Ballou & McClanahan*, attorneys for appellant.

*L. Andrews*, attorney for Board of Registration.