## E. R. MOFFETT

*v.*

## ROBERT H. HILL.

*Filed at Springfield October 31, 1889.*

1. ELECTIONS—*residence of voter—what constitutes—absence—abandonment, etc.* A permanent abode, in the sense of the statute in regard to elections, means nothing more than a domicile—a home—which the party is at liberty to leave temporarily, as interest or whim may dictate. It is not required that the elector shall continuously remain at his residence, and his absence may be long or short, or for definite or indefinite periods, and he does not thereby necessarily lose his residence or his right to vote.

2. So an absence for months, or even years, if all the while the party intended it as a mere temporary purpose, to be followed by a resumption of the former residence, will not be an abandonment of such residence.

3. But the domicile of a person in another State, having been once acquired, will be presumed to continue, unless it affirmatively appears it has been changed. In order to work such change there must be, both in fact and in intention, an abandonment of the former residence, and a new domicile acquired by actual residence, coupled with an intention to make it a permanent home.

4. SAME—*the particular case.* A resident voter of this State in 1880 went to the State of Kansas, and there pre-empted a tract of land, residing on the land for two years, and while there made oath that for two years his home and actual residence were on the pre-empted tract of land. In 1882 he returned to this State, but made several statements showing his intention of returning to Kansas when he should acquire the necessary means to do so : *Held,* that these facts showed that the voter in 1880 abandoned his prior domicile here, and for fully two years had his home and domicile on his land in Kansas, and that his return here was only for a temporary purpose.

5. The same person, after having acquired a domicile in the State of Kansas, returned to his former home in this State in 1882, at first for a temporary purpose; but he voted here, without objection, at the presidential election in 1884, at the spring election in 1885, at a judicial election in 1885, and at the spring elections in 1887 and 1888 : *Held,* that his acts in voting here afforded an almost conclusive presumption and evidence of his intent to abandon his foreign domicile and resume his former one in this State.

6. In 1871 or 1872 a party, who was a laborer and horse doctor, and without family of his own, made his home with the family of another, until in 1880, when he went to Kansas, where he remained until 1882, for the purpose of pre-empting a tract of land. In 1882 he returned to this State, and to the same house where he formerly resided, at first intending to return to Kansas. From 1884 to 1888 he voted in the township where he claimed his residence, without challenge. He made his home at the house of his friend up to the spring election of 1888, but was frequently absent for weeks, on visits or business, but always returning when out of work, and frequently on a Sunday. When absent, he left his personal property and some of his clothing at his friend's house : *Held*, that these facts indicated a purpose to resume his domicile here, and he was a qualified voter, at the spring election of 1888, in the township where he thus claimed his residence.

APPEAL from the County Court of Macon county; the Hon. WILLIAM E. NELSON, Judge, presiding.

Mr. W. C. OUTEN, for the appellant :

By the words "permanent abode," it is not intended that the elector shall continuously remain at such residence.   He may be absent each week from Monday morning till Saturday night for an entire year or years, etc.   *Dale* v. *Irwin*, 78 Ill. 170 ; *Kreitz* v. *Behrensmeyer*, 125 id. 193 ; McCrary on Elections, 195.

The intention of the party is a controlling element on the question of his residence.   That intention is evidenced, not alone by his words, but also by his acts.   Where he had claimed and exercised the right to vote ; where he had stayed when sick or indisposed, if a laboring man ; where he stayed when out of a job ; where he left his clothing and other property, if he had any,—all these things should be considered. When all these outward signs agree with the declaration of the party, they afford irresistible proof.   *Cobb* v. *Smith* 88 Ill. 201 ; *Wilkins* v. *Marshall*, 80 id. 74.

To lose one's residence requires a union of act and intention. *Smith* v. *People*, 44 Ill. 16 ; *Hayes* v. *Hayes*, 74 id. 312.

Mr. I. A. BUCKINGHAM, for the appellee:

When a party leaves his residence, or acquires a new one, it is the intention with which he does so that is to control. *Kreitz* v. *Behrensmeyer*, 125 Ill. 195.

An absence for months, or even years, if all the while intended as a mere temporary absence for some temporary purpose, to be followed by a resumption of the former residence, will not be an abandonment. *Kreitz* v. *Behrensmeyer*, 125 Ill. 195.

There is no evidence in the record, nor was there any on the trial, that Kreidler ever changed or altered his intention of getting ahead and going back to Kansas.

The intention requisite for a change of domicile is intention completely to abandon the former place of abode, and to settle presently and permanently in another place. Jacobs on Domicile, sec. 150.

Whether a person removing from one place to another intends to change his domicile, is a question of fact, and not of law. *Fitchburg* v. *Wichenden*, 4 Cush. 190; *Mooar* v. *Harvey*, 126 Mass. 219.

There is a strong analogy to the homestead right, as that can not exist without a residence. *Wilkins* v. *Marshall*, 80 Ill. 77.

Where a person leaves a place which is occupied as a homestead, for a temporary purpose, intending to return, it can not be held that the homestead has been abandoned. *Kenley* v. *Hudelson*, 99 Ill. 500; *Hayes* v. *Hayes*, 74 id. 312; *Potts* v. *Davenport*, 79 id. 455.

A domicile once acquired is presumed to continue until it is shown to have been changed. *Mitchell* v. *United States*, 21 Wall. 350.

Mr. JUSTICE BAKER delivered the opinion of the Court:

At an election held April 3, 1888, E. R. Moffett, appellant, and Robert H. Hill, appellee, were candidates for the office of supervisor, in the township of Blue Mound, county of Macon

and State of Illinois. The result, as counted by the judge and clerk of the election, was one hundred and twenty-five votes cast for appellant and one hundred and twenty-four votes cast for appellee, and appellant was declared elected, received a certificate of election, and qualified as supervisor. Appellee filed a petition, or statement in writing, in the county court of Macon county, to contest the election of appellant, and answer was made, issues formed, and a trial had in said court. The claims made at the trial by appellee, the contestant, were, that one Stevens voted at the election a ballot from which the name of appellant was erased and upon which no other name was written, and that said ballot had been wrongfully counted for appellant; and also, that one Harry Kreidler had voted at said election, and his vote had been counted for appellant, and that said Kreidler was not a resident of said town, and was not a legal voter therein. Appellant, at the trial, contended that all the ballots counted by the election officers for him were properly so counted, and that Kreidler was a qualified and legal voter at said election, and made a counter-claim that one Frank Lynch voted at the election and his ballot was counted for appellee, and that said Lynch was not a legal voter. The findings of the court, at the hearing, were, that the name of appellant was erased from the ballot cast by Stevens, and that it should not have been counted as a vote for appellant; that Kreidler was not a legal voter, and his ballot should not have been counted for appellant; and that Lynch was not a legal voter, and his ballot should not have been counted for appellee. The conclusion reached by the court was, that appellant and appellee had each received one hundred and twenty-three votes for the office of supervisor. The result found by the court showing a tie, it was thereupon, acting under an order of the court, decided by lot that appellee was duly elected to the office, and judgment was entered accordingly. Moffett has appealed to this court from the judgment of the county court. He here concedes that the trial

court was authorized, from the testimony of Stevens and from an inspection of the ballot cast by him, to hold that said ballot should be counted as a blank in respect to the office of supervisor. On the other hand, appellee concedes that, under the evidence, Frank Lynch was not a competent voter, and has assigned no cross-errors. The controversy, then, depends for its determination on the legality or illegality of the vote cast by Harry Kreidler.

The evidence shows that Kreidler is about fifty-nine years of age and has no family; that in 1871 or 1872 he went to the house of one H. H. Rosengrants, a farmer living in Blue Mound township, and remained there, making it his home, until some time in the year 1880, when he went to Kansas, where he remained for upwards of two years, and while there pre-empted one hundred and sixty acres of land in that State, and remained upon it for two years, and made oath while there that for two years his home and actual residence was on that tract of land. In the fall of 1882 he returned to Illinois and to the Rosengrants farm. Soon after his return he told Joseph Austin that "he had one hundred and sixty acres of good land in Kansas, and that as soon as he could get ahead he was going out there again;" and about the same time he told John Chapman that he "had come from Kansas, and was going to Kansas." This evidence establishes that in 1880 Kreidler abandoned his domicile in Blue Mound township, and for fully two years had his home and actual residence on his one hundred and sixty acres of land in Kansas, and acquired a new domicile there. It also shows that at the time of his return to Illinois his intention was that his absence from Kansas should be merely temporary, and for a temporary purpose, and that he then had no intention of abandoning his residence in the latter State.

The question arises, whether, since he came back from Kansas, Kreidler has relinquished his intention of returning there, and has acquired a residence in Blue Mound township, or else-

where in the State of Illinois. In *Kreitz* v. *Behrensmeyer*, 125 Ill. 195, this court said: "An absence for months, or even years, if all the while intended as a mere temporary absence for some temporary purpose, to be followed by a resumption of the former residence, will not be an abandonment." Kreidler has never gone back to Kansas, nor does it appear that he has ever, since shortly after his return from there, expressed an intention of so doing. But his domicile there having been once acquired, will be presumed to continue, unless it affirmatively appears it has been changed. In order to work such change, there must be, both in fact and in intention, an abandonment of the former residence and a new domicile acquired by actual residence, coupled with an intention to make it a permanent home.

The evidence is full, satisfactory and complete, that Kreidler voted, without objection, in Blue Mound township, at the presidential election in 1884, at the spring election in 1885, at the judicial election in 1885, at the spring election of 1887, and spring election of 1888, but it is uncertain whether or not he voted in 1886. Appellee urges that the fact he so voted is not evidence of an intention to renounce his Kansas residence, and that the case of *Hayes* v. *Hayes*, 74 Ill. 312, supports such view. It was there held that Dr. Hayes had not forfeited his original residence in this State because he had voted in Iowa, where he was temporarily residing owing to domestic troubles, but the decision was put upon the ground, that as the laws of Iowa conferred the elective franchise on "a resident of six months," such act of voting was consistent with his domicile in this State. With us, however, a "permanent abode" is prescribed by the statute as an indispensable requisite to the right of suffrage. A "permanent abode" here is wholly inconsistent with the idea of a domicile and permanent residence elsewhere. In *Cobb* v. *Smith*, 88 Ill. 199, this court said: "The presumption is almost irresistible, plaintiff in error considered Mason City his residence when he voted, and, intention entering into

and forming a large element in fixing a person's residence, this act is almost conclusive in characterizing the intent and the residence. Nor is there any evidence tending to overcome this strong and almost irresistible conclusion."

In *Kreitz* v. *Behrensmeyer, supra,* this court held, that on questions of domicile less weight should be given to a person's declarations than to his acts; and when, in 1884, and frequently thereafter, Kreidler exercised the elective franchise in Blue Mound township, in this State, his acts were very potent to show that, since he came back from Kansas, in the fall of 1882, and announced an intention of going back there, he had abandoned such idea, and his domicile there, and before and at the time of so voting had the intention of making Blue Mound township his residence and home. Of course, such acts would not, in this litigation, where the interests of third parties alone are directly involved, be so conclusive as they would be if Kreidler was a party to the suit, and the litigation was in respect to legal rights and interests claimed by him therein, and the acts were in conflict with the assertion of such rights and interests. So, also, the fact of a person voting in a particular election district, he knowing his home is elsewhere, would not make him a permanent resident of such district. But in this case there is no testimony tending to impeach the claim of appellant that Kreidler, at least so long ago as the fall of 1884, had abandoned his intention of returning to Kansas, and had acquired, or formed an intention to acquire, a home in Illinois.

At the hearing, Kreidler testified, in substance, that since 1884 he had resided and made his home with Rosengrants, in Blue Mound township; had not claimed or considered any other place as home; had during all the intervening time some clothing and other property there, even when away himself; that when out of a job or not well, he went there to stay, made that his residence and voting place during all the time, and never, during such time, claimed the right to vote or

offered to vote anywhere else, but all the while claimed and exercised the right to vote there. Rosengrants testified, among other things, that there was an understanding between Kreidler and himself, the former might make his (Rosengrant's) house his home, and that he considered his house Kreidler's home; since Kreidler's return from Kansas he had stayed more there than anywhere else, and when he went away to work he always came back there "if a little off anyway, and always stayed there when out of a job." It is true, Kreidler stated, on his cross-examination, that his home was at the house of Rosengrants all the time from 1871, which would include the two years or more he was in Kansas; but we do not think his mistake or misstatement in that respect as of controlling importance, since the material matter is in regard to his domicile subsequent to the fall of 1882.

It appears that Kreidler is a laborer and horse doctor; that he was frequently away from Blue Mound township for many weeks and months at a time, working wherever he could find work to do; that he had relatives in Chicago, Bloomington, Decatur and Moultrie county, and sometimes visited them, and remained several days, or weeks or months; that it was his habit to speak of such place as he was stopping at for the time being, even if it was for a very brief period, as his "home," and that when away at work he often came back to Rosengrants' house to spend Sunday. It also appears that the only personal property he had, except his clothing, were a wagon and a set of harness, and these latter were kept on the premises of Rosengrants. It would seem his stock of clothing was quite limited, and the evidence is conflicting whether any portion of it was left in the Rosengrants house during his absences from there. His testimony, and that of Mr. Rosengrants, is quite positive that he had more or less clothing there all the time. This is corroborated by a circumstance testified to by William Johns, a witness for appellee. On the other hand, Shuck, a son-in-law of appellee, who worked for Rosengrants

from November, 1883, to December, 1885, testified that during that time Kreidler did not leave any clothing there, and that if he had left any, he thinks he would have seen and known it. Mrs. Rosengrants, also, testified, that when he was away he left no clothing at their house, and that she would have known it if he had left any there; but in a subsequent portion of her testimony she stated he at one time left an overcoat there for a few days, and the tenor of her testimony impresses us with the belief she had considerable feeling against Kreidler. She did state, however, that she supposed that he and her husband "consider our house his home." Upon the whole, we think the weight of the evidence shows that Kreidler was in the habit of keeping a few articles of clothing at the house.

"A permanent abode," in the sense of the statute in regard to elections, means nothing more than a domicile,—a home,—which the party is at liberty to leave temporarily, as interest or whim may dictate. (*Dale* v. *Irwin*, 78 Ill. 170; *Kreitz* v. *Behrensmeyer, supra*.) It is not required that the elector shall continuously remain at his residence, provided he does not acquire a new residence; and his absence may be long or short, or for definite or indefinite periods, and he does not thereby lose his residence or his right to vote. It is clear that Kreidler did not spend a majority of his time from 1882 or 1884 at the farm of Rosengrants, but he was there much more than at any other place; was frequently there for considerable periods, at one time for nine or ten months, continuously; often came there to spend Sunday; came back there when out of work or not well; kept his goods and chattels, except his clothing, there, and sometimes left articles of clothing there; had an arrangement with Rosengrants that should be his home, and uniformly claimed and exercised the right to vote in that township, and never elsewhere. In fact, no claim is made by appellee that Kreidler ever acquired "a permanent abode"

or domicile in either Chicago, Bloomington or Decatur, or in Moultrie county.

From an examination of all the testimony in the record, our conclusion is, that the county court should have found that Kreidler had abandoned his residence in Kansas and had acquired a residence in Blue Mound township, and was a legal and qualified voter in said township at the election of the third of April, 1888, and should have counted his vote for appellant, and found that appellant had received one hundred and twenty-four votes and appellee one hundred and twenty-three votes for the office of supervisor, and should have declared that appellant was duly elected to said office, and rendered judgment in his favor.

The judgment was erroneous, and it is reversed, and the cause is remanded for further proceedings in conformity herewith.

*Judgment reversed.*