PEOPLE *v.* OSBORN.

1. ELECTIONS — DOMICILE — INTENTION — COLLEGES AND UNIVERSITIES.

While a student at a college will not be deemed to have lost or acquired a residence during his attendance there, under Const. art. 3, sec. 2, a person having no other domicile may, in good faith, become a resident of the city in which such college is situated, entering the institution as a citizen thereof.

2. SAME—CRIMINAL LAW—ILLEGAL VOTING—RESIDENCE.

Criminal intent is a necessary element of the offense defined by § 11439, 3 Comp. Laws, prohibiting voting in a ward of which the voter is not a resident; good faith being a defense to such prosecution.

Exceptions before sentence from Calhoun; North, J. Submitted April 18, 1912. (Docket No. 123.) Decided May 3, 1912.

George Osborn was convicted of illegal voting. Reversed.

*Robert H. Kirschman*, Prosecuting Attorney, and *Edward R. Loud*, Assistant Prosecuting Attorney, for the people.

*Weeks & Cooper*, for respondent.

Respondent is unmarried, 27 years of age, and, born in Canada, is a naturalized citizen of the United States. His father, an itinerant Methodist clergyman, is not a citizen of the United States, though living in Michigan. From Canada respondent came to Whittamore, Mich., but just before going to Albion, Mich., in September, 1905, he was teaching school in the township of Burley, Iosco county, Mich., where he was registered as an elector and voted. He has not lived with his parents for 12 years and has supported himself since he was 15 years of age. When he left Iosco county, he did so without expecting ever to return, and his name was stricken from the registration book. At Albion he registered at the college as a resident of the city. He has lived there continuously, in the third ward, where he is registered as an elector and where he voted for five years. His permanent address since September, 1905, has been Albion, Mich., and during that time he has earned his living in and about the city. He has no definite plans for the future. At the spring election in the year 1911, respondent's vote was challenged, but was received by the inspectors, whereupon he was arrested, and, in an information filed in the circuit court for the county of Calhoun, is charged with having voted illegally. The material facts are not in dispute. Respondent testified, at the trial, that his primary purpose in going to Albion was to attend college; that he

had been for six years fitting himself for the ministry, and went to Albion because he could there obtain an education and because there were offered there inducements to work his way through college.   He said:

"If after graduating I should receive a call to go to some other place, I expect I would go.   I may receive a call to preach in a church in Calhoun county but not in Albion.   I don't expect to in Albion."

He was asked by the court the following question:

"Is there anything now, or has there been anything during the past two years, that has caused you to remain there except the fact that you are taking the course of instructions provided by Albion college?"

To which he replied:

"There is.   In the first place, the ecclesiastical history of the college, and, in the second place, the opportunity we get in supplying pulpits around the immediate vicinity and attending college also, and also the work we get during vacations in the city at various employments as the employment bureau suggests and discovers for us.

"*Q.* Those things which you have just enumerated are the only things that have caused you for the past year or so and are now causing you to continue your residence there in Albion.   Is that true?

"*A.* Yes, the school advantages plus the opportunities of earning my way through."

Respondent's motion for a directed verdict was denied, and the court advised the jury that, upon the undisputed evidence, respondent could not have acquired a residence in Albion.   *Pro forma* he submitted the question of respondent's guilt to the jury, which returned the following verdict:

"Under the direction of the court only, we return a verdict of guilty."

The cause is here on exceptions before sentence.

Ostrander, J. (*after stating the facts*).   In the Constitution of 1850, section 5 of article 7 reads as follows:

170 Mich.—10.

"No elector shall be deemed to have gained or lost a residence by reason of his being employed in the service of the United States or of this State; nor while engaged in the navigation of the waters of this State or of the United States; or of the high seas; nor while a student of any seminary of learning; nor while kept at any alms-house or other asylum at public expense; nor while confined in any public prison, except that honorably discharged soldiers, sailors and marines who have served in the military or naval forces of the United States or of this State, and who reside in soldiers' homes established by the State, may acquire a residence where such home is located."

Construing this provision, it was said, in *Wolcott v. Holcomb*, 97 Mich. 361, 367 (56 N. W. 837, 839 [23 L. R. A. 215]):

"We are of the opinion that the terms 'by reason of' and 'while' were understood by the framers of the Constitution to have a different meaning. In the former case the intention would very largely, if not entirely, govern the question of domicile, while in the latter it would not. It was clearly the intention of the former provision to give the citizen the right, if he chose, to carry his residence with him to the place where he was employed in the service of the United States or of the State, and in the latter case it seems equally clear that it was the intention not to give that right."

It was also said, by way of illustration and argument:

"Furthermore, students in all institutions of learning, although they are in attendance there for the sole purpose of obtaining an education, might, at their own will, become electors in the places where such institutions are located. We think the Constitution prohibits a change of residence under such circumstances, and that, when one's presence in any of the institutions named is due to the sole purpose of receiving the benefits conferred, his former residence must be considered his domicile for citizenship."

While this decision was rendered by a divided court, it was followed, without dissent, in *People, ex rel. Saunders,* v. *Hanna,* 98 Mich. 515 (57 N. W. 738). In the Constitution of 1909 the same provision appears as section

2 of article 3. The punctuation is not the same as that employed in the earlier Constitution, and there is some slight change in the words used. There is nothing upon which a change of meaning may be reasonably predicated. It will be assumed, therefore, that the convention which framed the last Constitution included therein the provision in question with the meaning given to it in the decisions which have been referred to. That portion of the opinion of the court in *Wolcott* v. *Holcomb* to which we have alluded was not, as respondent intimates, mere dictum. The right of a student attending an institution of learning was not involved in that case, but the right of one placed by the Constitution in the same class with such a student, in respect to a change of domicile, was involved. We think the history of the constitutional provision requires the decision to be followed in like cases. Is the case before us a like case?

It is said in the majority opinion delivered in *Wolcott* v. *Holcomb*, that no question of disfranchisement was involved, and in the portion of the opinion above quoted the language implies a limitation of application of the rule announced to such persons as attend institutions of learning "for the sole purpose" of receiving the benefits conferred. It is clear, too, from the facts stated in the opinions, that the inmate of the Soldiers' Home whose rights were considered was, at the time he applied for admission to the Home, a resident of Woodstock township, Lenawee county. He presented the certificate of the supervisor of the township that he was then an actual resident of the township. The inmate later declared that—

"He always intended, and in fact made, the township of Grand Rapids, and that part of it in which said Soldiers' Home is located, his home, *subsequent to his entry therein.*"

The respondent in the case at bar appears to have had no residence, in fact or by intention, when he went to Albion. If we eliminate from the circumstances to be

considered the fact of his presence at the college, the inference may still be drawn that he adopted in fact and by intention a residence in Albion before entering college, having at the time, and intending to have, no other residence. I apprehend that if a young man of full age was sent to college by his father, never having acquired a residence apart from that of his father, and if his father and family should, in good faith for the purpose of establishing their family domicile there, take up a residence in the college town while he was a student there, he would thereby gain a residence as an elector. In such a case he would gain a residence "*while* a student at an institution of learning;" but the fact that he was a student would be a circumstance of no importance in determining residence. So if the family of such a young man should remove from one place to another in the State, I apprehend that he might register and vote as an elector in the community in which his father lived. In such a case, he would both lose and gain a residence "*while* a student at an institution of learning." A construction of the Constitution which would deny him the right to reside where his father resided, and the right to gain a residence elsewhere, "while a student," would involve disfranchisement. The law will not permit students at institutions of learning, by any declaration of intention, to become electors in the communities in which such institutions are situated. But if respondent, having no domicile, in good faith made a domicile at Albion, entering college as a resident citizen of Albion, he was entitled to vote there. Whether he did so is a question of fact.

It is charged in the information that respondent—

"Not being then and there a resident of the third ward of the said city of Albion, did * * * wilfully vote at the said third ward voting place in the said city of Albion at the election held in the said ward and city."

I assume that the prosecution is under and by virtue of 3 Comp. Laws, § 11439, which provides a punishment for the voting by a qualified elector in any township or ward

in which he does not reside. It does not appear that the attention of the court was directed to a question stated rather than argued in the brief for respondent, viz., that a criminal intent must be found to violate the law. The court was requested to instruct that a verdict of not guilty must be returned. The jury was instructed that respondent was presumed to be innocent and that the people must establish guilt beyond a reasonable doubt. The question of respondent's good faith in voting was not mentioned in the charge. Counsel for neither party refer to authority upon the subject. The statute in respect to a qualified elector voting at a place not his residence does not use the words "wilfully" or "intentionally," or any other word qualifying the act. In terms, the act of voting in a place where the elector does not reside is made a misdemeanor. In the same connection, it is declared to be a misdemeanor if an elector gives in two or more votes folded together, or votes, or offers to vote, more than once at the same election, in the same or different voting places. As a rule, there can be no crime without criminal intent; this is not a rule without exceptions. *People* v. *Roby,* 52 Mich. 577 (18 N. W. 365, 50 Am. Rep. 270); *People* v. *Rice,* 161 Mich. 657, 664 (126 N. W. 981), and cases cited in opinion. There appears to be no reason for saying that criminal intent is not a necessary element of the offense with which respondent is charged, and upon a new trial the jury should be so instructed.

It will be certified to the circuit court for the county of Calhoun that the exception to the charge delivered is sustained, and that the verdict should be set aside and a new trial ordered.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred. BIRD, J., did not sit.