J. W. Dodd, Appellant, v. William Lorenz, Appellee.

No. 40354.

June 23, 1930.

*Thomas & Thomas* and *William S. Anderson*, for appellant.

*C. B. Stiger* and *M. W. Hyland*, for appellee.

FAVILLE, J.—At the general election of November 6, 1928, appellant and appellee were opposing candidates for the office of county supervisor for the second supervisor district in Tama County, Iowa. It is admitted that the appellant received 1,299 votes at said election, and the appellee 1,298. This appeal involves a challenge lodged against the qualifications of three voters, all of whom voted for the appellant. These three voters were school-teachers, engaged in teaching in the public schools of Traer, in the election district. The only evidence adduced was that of the said three teachers. All of them were unmarried. It is essential that we review their evidence at some length.

The witness Lucile Hayes testified, in substance, that she graduated from Grinnell College in June, 1927, and while attending said college, she lived with her grandparents at Grinnell. Her parents and grandparents all lived together at Grinnell during her college days, except for about a year, when they maintained separate homes, during which time she stayed with her grandparents. She signed a contract to teach in Traer in April, 1927, and went to Traer for the purpose of entering upon her work the first of September, 1927. During the preceding summer she had been on a trip in the west. Her contract was for a period of nine months, beginning September 1, 1927. She spent the Thanksgiving vacation and the Christmas vacation at Grinnell. Part of the spring vacation she spent at Oskaloosa, and part at another place. In March, 1928, she signed a new contract to teach said school for another nine-months period, commencing September 1, 1928. She spent about half of the summer of 1928 at her grandfather's home at Grinnell, and traveled part of the time in various places. During the summer of 1928 she stored part of her things in the home where she lived in Traer. She returned to Traer September 1, 1928, and resumed her work of teaching. She spent her Thanksgiving vacation in

1928 with her grandparents in Grinnell. At that time her father and mother had removed permanently to a new home in Muscatine. The Christmas vacation she spent at her grandparents' home. In April, 1929, she again entered into a contract to teach in Traer for the following year. That summer, she was in Grinnell for about two weeks, and the remaining time she was on a trip in the east. During the summer of 1928, when she was not traveling, she was at her grandparents' home in Grinnell. She was absolutely self-supporting. The source of her income was from her teaching. She had prepared herself for the teaching profession. She testified, on cross-examination, that, when she came to Traer, she did not know how long she would be there, but intended to continue her employment there after the first nine-months contract had expired, in case a contract was given her. She testified that she intended to stay there for three or four years, if things were suitable to her and to the school board. She received no support from her parents. She testified that she considered her residence as Traer; that she had a banking account there; that her interest in the community was there, and not at Grinnell, nor at Muscatine, where her parents lived. She said that she had no intention of returning to Grinnell as her home, and had merely been there to visit with her relatives. Her own mother died when she was a year old, and her father had remarried; and she testified that she looked upon her grandparents' home at Grinnell as her home until she graduated from college, and that, when she left Grinnell and came to Traer, she intended to make her residence and home where she taught. She considered it her residence when she came there to spend the teaching year, and was changing it from Grinnell to Traer. She testified that she had a room at her grandfather's at Grinnell; that she took her pictures and a couple of rugs to Traer with her, and what she did not need to make her comfortable at Traer, she left at Grinnell. She had never gone to Muscatine to live with her people. She testified that she intended to go to the place where she had a teaching contract, and make that her home, and that she intended to make Traer her home as long as she had a teaching contract there, but to return to her grandparents or go to her parents when her teaching was finished.

The witness Mayme Christ testified that she was engaged as a school-teacher at Traer in August, 1927, and came there in Sep-

tember, 1927, and was engaged to teach for nine months; that her contract was her sole reason for going to Traer; that her parents lived at Cresco, Iowa. She spent some time with them after September 1, 1927, but not all of the time. The Thanksgiving vacation she spent at her parents' home in Cresco, and also the Christmas vacation. The summer of 1928 she spent partly at Cresco and partly at school at Iowa City. Prior to entering into the contract to teach at Traer, she resided with her parents at Cresco. She had taught a rural school in Howard County. She renewed her contract at Traer for the year beginning September 1, 1928, for nine months. At the time of the trial, she testified that she had spent her time since school closed, in June, 1929, at Cresco. She was educated for the teaching profession at Cedar Falls, and obtained her education with the intent to follow the teaching profession. She was self-supporting, and when she came to Traer, did not know how long she would remain there. She testified that she intended to make Traer her home during the time she was employed there, and intended to return to her parents' home at the expiration of her employment, but expected to remain at Traer as a resident as long as she was employed there. She was born in Cresco. She testified that she did not think she ever gave up Cresco "as a sort of a home;" that she intended to make her home where she was teaching, and expected to return to Cresco at the expiration of her teaching, if she did not have anything else to do.

The witness Effie Wylie testified that she taught at Traer beginning September 1, 1928, and had a contract for teaching for a period of 9 months. She graduated from the Gilman High School at Gilman, Iowa, in June, 1923, and had resided in Gilman or vicinity for 16 years, more or less, prior to 1923, living with her parents for 14 years, and with an uncle for 2 years. Upon completing her contract at Traer in the spring of 1929, she went to her parents' home near Gilman. In 1923, 1924, and 1925, she attended the State College at Ames, spending her vacations at her parents' home. In the summer of 1926, she was employed elsewhere, and from September, 1926, to June, 1927, she was engaged as a teacher in the public schools of Salem, Iowa. She graduated from the State College at Ames in June, 1928, and in September, 1928, went to Traer to teach. She further testified that her reason for being at Traer was her contract to

teach; that, to the best of her knowledge, her residence in the future will be in Tucson, Arizona; that she held a state teacher's certificate, and has followed the profession of teaching for a livelihood after her graduation from the State College; that she was self-supporting; that, when she came to Traer, on September 1, 1928, she did not know how long she would stay there, but intended to make her home there as long as she was employed there; and that she boarded and lodged at Traer during her employment there.

There is no very substantial difference in regard to the status of the three witnesses in question, as to their qualifications to vote. The case presents the one question as to whether or not an adult, unmarried woman, who is engaged in the profession of teaching, and who has a contract to teach for a period of nine months, and who enters upon said contract with the intention of making the place of performance of said contract her home, and of residing there during the completion of said contract, and longer if her employment continues at said place, is a qualified voter at said place where she is so employed. Our Constitution, Article 2, Section 1, defines the qualifications of a voter, and provides that such voter "shall have been a resident of this state six months next preceding the election, and of the county in which he claims his vote sixty days." The question, then, narrows itself to the proposition as to whether these three parties were "residents" of the voting precinct in which they voted. The cases almost universally interpret the word "residence" in election statutes as meaning "domicile." *Vanderpoel v. O'Hanlon,* 53 Iowa 246; *Moffett v. Hill,* 131 Ill. 239 (22 N. E. 821); *Elam v. Maggard,* 165 Ky. 733 (178 S. W. 1065); *Berry v. Wilcox,* 44 Neb. 82 (62 N. W. 249); *State ex rel. Goldsworthy v. Aldrich,* 14 R. I. 171.

The presumption is that the voters were qualified. *Powers v. Harten,* 183 Iowa 764.

The identical question presented has not been before this court. In *Vanderpoel v. O'Hanlon,* 53 Iowa 246, we held that a student who was an unmarried man, attending the State University at Iowa City for the purpose of completing his education, his father furnishing the means for his support, and whose father's home in another county was his "headquarters" or residence during his vacations, and who did not know what he would

do after he graduated, and who at the time did not have any intention as to residence, was not a resident and voter at Iowa City, although he was there for the temporary purpose of attending school. It appeared that he had not formed affirmatively an intention to become a resident of said place.

In *Powers v. Harten,* 183 Iowa 764, we considered a case of an employee who worked on a farm about three miles from the residence of his parents, where he was seen to go frequently. There was no substantial evidence that he made his home at his father's home. He worked as a farm hand, and made his headquarters at the place where he was working. He had been living where his work required him to live. His home was where he was living. We said, ''It is not necessary that it be a permanent home,'' and held that he was a qualified voter.

In *State ex rel. Keary v. Mohr,* 198 Iowa 89, we considered the case of a school-teacher who had lived for more than ten years in Hubbard. He owned his home there, and his family, consisting of his wife and son, occupied that home while he was engaged in teaching in the town of Yetter. During the ten years, he had been engaged continuously in teaching in various towns. Part of the time he had taken his wife and son with him, and at the end of the school year, returned to the home at Hubbard. We held that the case presented one for submission of the issue to a jury.

The case of *Klutts v. Jones,* 21 N. M. 720 (158 Pac. 490, L. R. A. 1917A 291), presents a situation very close to that involved in the instant case. In that case, the evidence shows that the challenged voter had a contract with the directors of a school district to teach a certain school for the term beginning in September, 1913. She had previously attended school at a university. She testified, as did the witnesses in the instant case, that, when she contracted to teach the school, she took up her residence at that place, intending to make that place her permanent home so long as she was there employed. She was self-supporting. She intended to make her living, and did not expect to contribute to the support of her father's family. In the summer vacation, she visited her parents, attended a school, and returned, in August or September, to teach the following term. The court reviewed various cases passing on the question of the qualifications of a voter as to residence. The court said:

"The question of whether a person is a resident of one place or another is largely a question of intention, and, where the intention and the acts of the party are in accord with the fact of residence in a given place, there can be no doubt of the fact that such party is a bona-fide resident of the place where he intends to and does reside, and that he has the right to exercise all the rights and privileges accorded actual residents of such place, provided he comes within the provisions of the law regulating such rights. Here the voter's intention was to make Taiban her home. She was over 21 years of age, and was making her own way in the world. She had the right to select the place of her choice as her home. Under the law, she owed no further duty to her parents, nor they to her. She was free to make her home where she chose, and, having elected to live in Taiban as her home, and claiming none other, she had the right to vote in the election held, because she came within all the other provisions of the law regulating the right to vote."

In Goodrich on Conflict of Laws 35, it is said:

"An interesting and rather difficult question is, How long must a person intend to live in a place as 'home,' in order that a domicile may be established in that place? Some authority has included in the definition of domicile an intention to remain in the given place always. Other authorities have modified this to an intention to remain for an indefinite future time, or permanently. It is certainly true that some degree of permanency of abode is necessary to make a domicile. But one can surely in fact have a settled place of abode, even though he knows that in the future he may possibly, or even probably, change it for another. If the language requiring intention to remain in a place always, or indefinitely, or some such phrase, is taken literally, many persons will be deprived, for practical purposes, of the exercise of civil rights depending upon domicile. Suppose a civil engineer moves to a city where he has a big building project on hand, brings his family, buys or leases a home, and establishes himself in the community. Is it to be said that he cannot acquire a domicile in the city because he intends to go elsewhere when his project is completed? It is not meant to be contended that the engineer necessarily does acquire a domicile in the place, but that the law should not say that he cannot do so because of the

limited nature of his stay. The same argument would be applicable to school-teachers, ministers, students, and many others who change their places of abode several times during their lives. It is believed that, in this country at least, a domicile of choice may be acquired by persons for whom it is impossible to establish a lifelong home; and it is sufficient that the intent be to make a given place a home here and now.''

See, also, *Ennis v. Smith*, 14 How. (U. S.) *400, *423 (14 L. Ed. 472); *City of Hartford v. Champion*, 58 Conn. 268, 275 (20 Atl. 471); *Winans v. Winans*, 205 Mass. 388 (91 N. E. 394); *Stevens v. Larwill*, 110 Mo. App. 140 (84 S. W. 113); *Price v. Price*, 156 Pa. St. 617 (27 Atl. 291); *People v. Osborn*, 170 Mich. 143 (135 N. W. 921).

In the instant case, the voters were all of age, unmarried, and self-supporting, and had fitted themselves for the profession of teaching. They had accepted contracts to teach school in Traer, with the intention of making said place their residence during their employment as teachers in said place. It is true that the contract was entered into for the school term of nine months, but that of itself did not disqualify the teacher as a voter if it was her intention to make that her home and to remain there permanently during the time she was employed as a teacher. It is a matter of common knowledge that, although teachers' contracts are generally executed from year to year, for the term of nine months each, many teachers in fact remain for a long period of years as teachers in the same school. It would be an unusual rule to hold that such a teacher, who has taught for 20 years in the same place, as many in Iowa have, under a new annual contract, executed each year for the school term of nine months, was not a resident of the town or city in which such employment took place. The acquisition of a residence or domicile is largely a matter of intent. The undisputed evidence in the instant case shows that, as to each of said voters, there was the intent to make Traer a permanent residence for so long a time as the party was employed as a teacher in said school. The fact that the parental home was referred to as ''a sort of a home'' does not change the legal status of the voter. It is a common thing for a person to refer to his birthplace or the

residence of his parents as "home," although he may have an established residence and home of his own at another place.

We are of the opinion that the trial court was in error in holding that these three voters were disqualified to vote at the election. It therefore follows that said ballots should be counted, and that the appellant was duly elected as county supervisor. The order of the district court must be—*Reversed*.

All the justices concur.