WILKINS v. ANN ARBOR CITY CLERK

ELECTIONS—RESIDENCE—CONSTITUTIONAL LAW—STATUTES.

The constitution does not forbid a general definition of residence for voting purposes in a subsection of a statute and then in the following subsection certain statutory presumptions regarding residence in unusual circumstances; by establishing statutory presumptions against a change of voting residence for persons in specific classifications, the legislature has aided in preserving the purity of elections and guarded against abuses of the elective franchise by minimizing the possibility of a person voting twice in the same election (Const 1963, art 2, §§ 1, 4; MCLA § 168.11[a], [b]).

Appeal from Washtenaw, James R. Breakey, Jr., J. Submitted Division 2 April 9, 1970, at Lansing. (Docket No. 6,275.) Decided June 22, 1970. Leave to appeal granted November 24, 1970. 384 Mich 782.

Complaint for mandamus by Sally Wilkins, Jeanne D'Haem, and Kenneth W. Jendryka against John P. Bentley, clerk of the city of Ann Arbor, to compel defendant to register plaintiffs for the April 1, 1968, city election. Writ denied. Plaintiffs appeal. Affirmed.

---

REFERENCE FOR POINTS IN HEADNOTE
26 Am Jur 2d, Elections §§ 2, 5, 66.

*Douvan, Harrington & Carpenter,* for plaintiffs.

*Jerold Lax,* City Attorney, and *Edward B. Goldman,* Assistant City Attorney, for Ann Arbor City Clerk.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Wallace K. Sagendorph,* Assistant Attorney General, *amicus curiae.*

Before: McGREGOR, P. J., and DANHOF and LARNARD,* JJ.

DANHOF, J.  Eight students of the University of Michigan brought an action for mandamus after they were refused permission to register to vote by the defendant city clerk.  One plaintiff, Carol Shalita, was dropped prior to trial.  By consent of the defendant, plaintiffs Schultz and Jones were permitted to register and vote in Ann Arbor.  By judgment of the court, plaintiffs Eichenbaum and Hollenshead were allowed the right to register and vote in Ann Arbor.  Plaintiffs Wilkins, Jendryka and D'Haem were denied the right to register and vote in Ann Arbor by the lower court.  The latter three plaintiffs have appealed solely on the basis that subsection (b) of section 11 of PA 1954, No 116, as amended (MCLA § 168.11[b]; Stat Ann 1970 Cum Supp § 6.1011[b]) is unconstitutional.

The parties have stipulated that the plaintiffs on appeal are citizens of the United States, and at the time they applied for voter registration were over the age of 21, had resided in the State of Michigan for more than six months, and had lived in the city

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

of Ann Arbor for more than 30 days.  The parties also stipulated that each of the plaintiffs on appeal maintained an apartment in Ann Arbor where they habitually slept and commonly kept their personal effects, and that their regular place of lodging was in Ann Arbor.  While the parties may stipulate as to the facts, an appellate court is not bound only by such a stipulation and may examine the entire record developed in the trial court.  In this case we have reviewed the entire record filed in this Court.

The trial court held that subsection (b) of section 11 of PA 1954, No 116, as amended, was a constitutional exercise of the legislature's authority "to define *residence* for voting purposes," and that the evidence presented to the court failed to establish the voting residence of plaintiffs to be in Ann Arbor according to the rules laid down in *People* v. *Osborn* (1912), 170 Mich 143 and *Attorney General, ex rel. Miller,* v. *Miller* (1934), 266 Mich 127.

The two relevant constitutional provisions are Const 1963, art 2, §§ 1, 4.  They state:

"Sec. 1.  Every citizen of the United States who has attained the age of 21 years, who has resided in this state six months, and who meets the requirements of local residence provided by law, shall be an elector and qualified to vote in any election except as otherwise provided in this constitution.  *The legislature shall define residence for voting purposes.*  (Emphasis added.)

"Sec. 4.  The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, except as otherwise provided in this constitution or in the constitution and laws of the United States.  *The legislature shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.*  No law shall

be enacted which permits a candidate in any partisan primary or partisan election to have a ballot designation except when required for identification of candidates for the same office who have the same or similar surnames. (Emphasis added.)

Section 11 of PA 1954, No 166, as amended, states:

"(a) The term 'residence', as used in this act, for registration and voting purposes shall be construed to mean that place at which a person habitually sleeps, keeps his or her personal effects and has a regular place of lodging. Should a person have more than one residence, or should a wife have a residence separate from that of the husband, that place at which such person resides the greater part of the time shall be his or her official residence for the purposes of this act. *This section shall not be construed to affect existing judicial interpretation of the term residence.* (Emphasis added.)

"(b) *No elector shall be deemed to have gained or lost a residence* by reason of his being employed in the service of the United States or of this state, nor while engaged in the navigation of the waters of this state or of the United States or of the high seas, nor *while a student at any institution of learning,* nor while kept at any almshouse or other asylum at public expense, nor while confined in any public prison. Honorably discharged members of the armed forces of the United States or of this state and who reside in the veterans' facility established by this state may acquire a residence where the facility is located. (Emphasis added.)

"(c) No member of the armed forces of the United States shall be deemed a resident of this state in consequence of being stationed in any military or naval place within the state."

It is the plaintiffs' position that the legislature exhausted its constitutionally-granted power to define residence in subsection (a) of section 11 and

that subsection (b) of section 11 is therefore uncon-
stitutional. We do not agree with plaintiffs' con-
struction of the relevant constitutional and statutory
provisions.

Subsection (a) of section 11 sets forth the general
*indicia* of residence for registration and voting pur-
poses. They are (1) the place at which a person
habitually sleeps, (2) keeps his or her personal
effects, and (3) has a regular place of lodging. Sub-
section (a) also makes it clear that these general
*indicia* could apply in some circumstances so that a
person had more than one residence and that in those
cases the place at which the person resides the
greater part of the time shall be his or her official
residence for the purposes of registration and vot-
ing. Additionally, subsection (a) specifically retains
the existing judicial interpretation of the term
"residence."

It is our opinion that the legislature did not ex-
haust its constitutional authority to define residence
for voting purposes at the conclusion of subsection
(a). Subsection (a) was amended by the same act
which added subsections (b) and (c) [PA 1963 (2nd
Ex Sess), No 3]. We find no constitutional impedi-
ment to giving a general definition in subsection (a)
and then specifically defining in subsection (b) cer-
tain statutory presumptions which shall apply in
unusual circumstances.

Subsection (b) provides that certain categories of
electors shall not have gained or lost a residence
by reason of their particular employment, nor while
at certain institutions. The result is not disenfran-
chisement as argued by plaintiffs. Rather, it is
enfranchisement for some who would not otherwise
be able to establish a voting residence. For others
it is the retention of the opportunity to exercise the
franchise in the city or township that probably most

of the electors in the categories specified in subsection (b) would prefer.  Those electors like plaintiffs who have a different preference may vote in the city or township of their choice if they can establish that it is their intention to make it their residence for voting purposes according to existing judicial interpretation of the term "residence."  Four of the original eight plaintiffs in this case were able to do that.  The three plaintiffs who have perfected this appeal were not able to do so.  These findings of fact are supported by the record and are not clearly erroneous.  GCR 1963, 517.1.

Defendant has also argued that subsection (b) is a valid exercise of legislative authority granted by Const 1963, art 2, § 4, *supra*.  That section requires the legislature, among other things, to enact laws to preserve the purity of elections and to guard against abuses of the elective franchise.

We hold that by establishing statutory presumptions against a change of voting residence for persons in specific classifications, the legislature has aided in preserving the purity of elections and guarded against abuses of the elective franchise by minimizing the possibility of a person voting twice in the same election.

Affirmed, no costs, a public question being involved.

All concurred.