## A. HINKLE, Appellant, v. JACOB SADDLER, et al.

**School Elections:** CONSTRUING OF STATUTES. If the Iowa statutes, fixing the time during which the polls at elections in independent school districts shall remain open, do not apply to special elections, the law, at least, contemplates that a reasonable time and opportunity will be afforded electors in which to cast their votes.

**Enjoining Tax:** EVIDENCE. In an application for an injunction to restrain a board of school directors from certifying a tax alleged to have been voted at a school meeting, it was averred that the meeting was called for 2 P. M.; that a few moments before 4 P. M., when the ballot box was surrounded by people favoring the tax, the polls were declared open; that, as soon as these had voted, the polls were declared closed, not having been open more than fifteen minutes; that there were at least thirty-four persons in the room who would have voted against the tax, thus defeating it, but their votes were refused, that, when the vote was counted, there were more ballots in the box than there were persons who voted. *Held*, the temporary injunction granted should not have been dissolved, on motion.

**Dissolving Injunction:** CONSTRUING OF STATUTE. On application for injunction, a temporary injunction was granted. Afterwards, upon a supplemental petition being filed, another temporary injunction was granted *ex-parte*, after which defendants filed a motion to dissolve both injunctions. *Held*, that the hearing on the first petition and the allowance of the writ after the hearing was not equivalent to a hearing on a motion to dissolve, within Code, section 3402, providing that only one motion to dissolve or modify an injunction upon the whole cause shall be allowed; and, therefore, the motion to dissolve, filed later, should not have been overruled on that ground.

**APPEAL TO COUNTY SUPERINTENDENT:** *Construing of Statute.* Where a board of school directors, by fraud and abuse of power, have declared the adoption of a vote levying a tax for building a new schoolhouse, such action is not a decision of the board, within Code section 1829, providing that any person aggrieved by a decision or order of the district board of directors, in matters of law or fact, may appeal therefrom to the county superintendent.

**Practice Supreme Court:** Neither the objection that an order modifying an injunction was made upon a second motion for dissolution, in violation of Iowa Code, section 3402 providing that only one motion to dissolve or modify an injunction on the whole case, shall be allowed, nor that an injunction was dissolved when no answer was on file, can be raised for the first time, on appeal

*Appeal from Van Buren District Court.*—HON. W. D. TISDALE, Judge.

THURSDAY, APRIL 9, 1896.

*Wherry & Walker* for appellant.

*W. A. Work* for appellees.

KINNE. J.—I. Plaintiff, a taxpayer, in the independent district of Iowaville, in Van Buren county, Iowa, presented his bill for an injunction, to Judge Tisdale, wherein he alleged that said district then had a commodious two-story, brick schoolhouse; that in March, 1894, certain citizens residing in Jefferson county, and in territory which they claimed to have been detached from a school district in said county, and annexed to said independent district, but which, in fact, had never been legally made a part of said independent district, did, by their votes, pretend to elect directors in said independent district, one of whom was a resident of said territory so attempted to be attached, and that the votes thus cast were illegal and void; that the directors thus elected, constituted a majority of said board, and, 'against the wishes of the other director and of a majority of the citizens of said district, were proceeding to tear down said schoolhouse, and re-locate and rebuild the same on a new site, more than a mile distant from the old one, and, unless restrained, would do so, thereby involving the district in a large expense; that the question of removal had not been submitted to a vote of the electors of said district; that said electors had not voted any money or tax to rebuild said house; that the act of the legislature, legalizing the detaching of said territory from the district in Jefferson county, and the attaching of it to said independent district,

was void, being a special act. The judge made an order for hearing upon affidavits, and the cause was thus presented on the petition and amendments and affidavits filed; and, after argument, it was ordered that a temporary writ of injunction issue on filing of bond. The bond was filed, and the writ issued, restraining the defendants from tearing down, removing, and rebuilding said schoolhouse, About twenty days thereafter, plaintiff filed a supplemental petition in said cause, wherein it was alleged that, after service of the writ on defendants, they called a meeting of the electors of said independent district, for the purpoes of voting a tax to rebuild said schoolhouse; that, at said meeting, persons were allowed to vote more than once; that the vote was taken by ballot, and the polls kept open but fifteen minutes; that the meeting was called for two o'clock, P. M., and between that hour and three o'clock, P. M., thirty-four persons were present who had a right to vote, and who desired to vote against said proposition, whose votes were refused by the defendants; that only thirty-one persons in fact voted, and only twelve of them were then legal residents or voters in said district; that, under the law, defendants had no legal right to call said meeting for said purpose, and the electors had no power to vote such a tax at a called meeting; that there are two buildings in said district that can be had and used for school purposes until after the next annual meeting of said district, and said buildings are ample to accommodate all the pupils of the district; that, unless restrained, defendants will certify up said tax of ten mills on the dollar, and, in anticipation thereof, will contract an indebtedness for said district to pay in rebuilding said schoolhouse, in violation of the wishes of the electors and taxpayers of said district. An injunction was prayed to restrain defendants from certifying or levying said tax,

and from contracting any indebtedness in antic-
ipation thereof, and from using or appropriating any
of the material of the old building in the erection or
rebuilding of a new building, and it was prayed that
said election be decreed void. Without notice
to the defendants, a temporary injunction was
granted by Judge Traverse, which was served
on the defendants on September 20, 1894. On the
twenty-fourth of said month, defendants filed a
motion to dissolve both of said injunctions, which
motion was supported by affidavits. The grounds of
said motion, in substance, were that, at a meeting of
the electors, called as provided by law, to vote on the
question of a tax to build a schoolhouse, said directors
were authorized to dispose of the old site and mate-
rial, after completing the new house, and the funds
arising therefrom were ordered placed in the school-
house fund of the district; that, for the purpose of
building a new schoolhouse on the site selected, a tax
of four hundred dollars, or an equivalent, not exceed-
ing ten mills on the dollar of the taxable property of
the district, was voted. On the hearing, each side
filed affidavits, and the court made an order modifying
the injunctions before granted, to the extent of vacat-
ing them, except defendants were enjoined and
restrained from selling, or disposing of, the old school-
house site, and from selling, or disposing of, the mate-
rials of the old house; and in case the new house be
erected, at a cost not to exceed three hundred dollars,
the defendants were enjoined from building same
otherwise than by contract, after receiving proposals,
as by statute provided. The plaintiff excepted to the
ruling and appeals.

II. It is first contended by appellant that the
action of the court in dissolving or modifying the
injunction was in violation of section 3402 of the
Code, which provides: "Only one motion to dissolve

or modify an injunction upon the whole case shall be allowed." The argument is that, as the first injunction was granted after notice and hearing, it was equivalent to a hearing upon a motion to dissolve, and the motion thereafter made to dissolve was, in effect, a second motion. The claim is not well founded. There was but one motion to dissolve. Furthermore, a second writ was obtained without any notice and hearing, and the motion to dissolve was directed to it, as well as to the original writ. Even if appellant's contention was sound, he could not be heard to urge it now for the first time in this court. No such question was made below.

III. It is said it was error for the court to dissolve the injunctions when no answer had been filed. We are not called upon to pass upon this question, as this matter was in no way brought to the attention of the district court. We have so often announced the rule that questions which have not been brought to the attention of the trial court, and are first argued here, cannot be considered, that we need not cite authorities in its support. It is a rule which commends itself as fair and just, not only to the trial court, but to the parties. The policy of the law is to afford the court hearing the case an opportunity to correct its errors, if any, without resort to an appellant tribunal; and, when a party to the litigation fails to point out to the trial court errors which he claims it has made, he must be held to have waived them. Any other rule would work a great injustice to the courts below, and permit parties on appeal to raise and discuss questions not taken into consideration by such courts in the determination of cases heard by them.

IV. Several questions are discussed by counsel. We think the determination of one or two of them decisive of this appeal. Without determining as to

the legality of the attempted addition of certain territory lying in Jefferson county, to the independent school district of Iowaville, in Van Buren county, and without passing upon the legality of the proceedings leading up to the time the tax is claimed to have been voted, we proceed to a consideration of the question, which is stated by appellant thus: "The gravamen of this action is fraud in the conduct of that election, by which it is claimed this extraordinary tax of ten mills on the dollar was voted." We cannot review all of the statements found in the affidavits, touching this matter. In many respects they are in direct conflict. We shall only undertake to state the substance of the more material parts of them, and our conclusions reached after a careful consideration of the evidence.

Plaintiff claims, and supports his claim by the affidavits of thirty-four persons, who swear that they were present between the hours of two and three o'clock, at the place where the defendants had called a meeting of the electors of the district, to vote upon the question of levying a tax upon the property of said district, for the purpose of erecting a schoolhouse therein, and on the day provided and swear: "That each and all of them were residents and voters in said district; that all of them in good faith intended to vote against the levy of said tax; that they each asked and demanded the privilege of voting at said meeting; and that the defendants, Burden and Hayden (who constituted a majority of said board of directors) refused them the privilege of voting, and would not permit them to vote; that the polls were not open to receive votes until a short time before four o'clock P. M., and were closed before four o'clock P. M.; that said defendants claimed affiants were too late, and would not receive their votes." Fifteen affiants swear, that of those who voted at said meeting, eighteen were residents of Jefferson county, residing

in the territory sought to be attached to said district; that each of their votes was challenged on the ground that they did not reside in said district; that all of said challenges were ignored; that A. Hinkle and others demanded of the directors that the secretary of the board register the names of all persons voting at said election, but defendants Hayden and Burden would not permit it to be done; that said directors replied that they would run it to suit themselves. That, of all those who did vote at said meeting, only twelve resided within the district. That a motion was made to sell the old schoolhouse and material, and to build a new one on the proposed new site. The vote was taken then by a rising vote, out in the yard; and, before the result of it was announced, several persons came and asked to be counted as voting against the proposition, whose votes, if counted, would have defeated it. That Hayden and Burden refused to count said votes and declared the motion carried. That the vote on the tax was by ballot. That all present began preparing their ballots. That, when defendants were asked at what time the polls would be closed, the defendants told them that "there is no polls open." Afterwards, in response to the same question, they said the polls would be closed "whenever they got ready." That after half past three, soon thereafter, the defendants called out, "The polls are now open!" At this time the defendants were surrounded by men and women favorable to the tax, and, when their ballots had been cast, one of the defendants asked if everybody had voted, and at once declared the polls closed. Not more than ten or fifteen minutes had expired since the first vote was cast. Those present who desired to vote against the tax, asked to be permitted to vote, but were told that it was too late, that the polls were closed. Other voters came and desired to vote against the tax, and were not permitted to vote, and defendants

at once began counting the votes. That soon there-
after the meeting broke up in a general fight. There
is other evidence to the effect that, when the votes
were counted, there were forty-two ballots in the hat,
and that, as that was more ballots than there were
persons who voted, the defendants so fixed the record
as to show that only thirty-one persons had voted.
Also, that the proposition to sell the old schoolhouse
was in fact defeated. The defendants claim, and sup-
ported their claim by the affidavits of four persons,
that the disorderly conduct arose from the fact that
persons voted on the first proposition who were not
legal voters. They give the names of eight of said
persons, who they claim are included in the thirty-
four counted by plaintiff as opposed to the tax; that
plaintiff attempted to intimidate a legal voter, as they
are informed. The two defendant directors swear that
on this last ballot not a vote was refused, that no one
made an effort to vote after the last ballot had been
cast; that they were advised that it was the purpose
of plaintiff and those he could influence to break up
the meeting; that he incited disorder, and threatened
to make up a mob and take the ballots; and that a
majority of the residents of said district favor the
action taken at said meeting. Eleven persons swear
that the ballot was begun at about five minutes after
3 o'clock P. M., and the polls held open until after
4 o'clock P. M., and all electors had full opportunity
to vote. The same parties and two others swear that
no vote was refused either during the meeting or after
it was adjourned. Four of the persons who had already
made affidavits swear that, so far as they knew, there
were not thirty-four persons at said meeting who were
opposed to the action taken; that no vote was cast
against the tax proposition, and that ample time was
given all persons to vote who desired to do so; that
some persons came after the meeting had adjourned.

From other evidence it was made clear that there were thirty-four legal voters present at the meeting who were opposed to the levy of the tax.

We have recited the main facts as shown by the affidavits used in the hearing. We do not see how one can read this record without coming to the conclusion that this so-called "meeting" was a delusion and a farce. The evidence, we think, preponderates largely in favor of appellant's claim, and establishes these facts: *First.* That there was a studied attempt, which was successfully carried into execution, to permit no votes to be cast which were opposed to the levy of the tax; *second,* that more legal voters were present, and seeking to vote, and refused that privilege, than there were votes in fact cast; *third,* that, had such legal voters been permitted to vote, the tax would have been defeated; *fourth,* that the polls were not kept open more than fifteen minutes, and that none of these persons who were opposed to the levy of the tax had a fair opportunity to vote.

It is provided in Code, section 1789, that no district, township, or subdistrict meeting shall organize earlier than 9 o'clock A. M., or adjourn before 12 o'clock M.; and, in all independent districts having a population of three hundred and upward, the polls shall remain open from 12 o'clock M. to 7 o'clock P. M. By Acts Eighteenth General Assembly, chapter 8 section 5, which relates to independent districts, it is provided that the polls shall be open from 9 o'clock A. M. to 6 o'clock P. M. It may be claimed that the section last above referred to was not intended to apply to special elections, like that had in this case. It is not essential that we determine that question, as, in any event, the law contemplates that a reasonable time and opportunity will be afforded electors in which to cast their votes.

It is conceded that this independent district has a population of less than three hundred people. Appellees urge that one thousand people could vote within fifteen minutes. It is a sufficient answer to such a claim to say that in this instance only thirty-one voted, and more than that number of legal voters were arbitrarily, and without semblance of law or justice, deprived of their rights, and that in a case when the result, if it stands, will burden their property with a tax. It is apparent that these defendant directors, Burden and Hayden, were determined to have this tax levied; and, to accomplish that end with certainty, they conceived and executed a scheme whereby thirty-four persons were disfranchised. Their acts can find no support either in reason or authority. The refusal, under the circumstances disclosed in this record, to receive votes, cannot be characterized as other than a gross abuse of their powers,—an utter disregard of the rights of electors, which no court should sanction. As was said in *State v. Wollem*, 37 Iowa, 131: "That fair play and the frankness and liberality which the law intends shall characterize such meetings and elections were violated. Only forty minutes, when the law contemplates three hours for such a meeting and election, when it was very apparent that all the electors had not voted, savors too much of the factional partisan caucuses to justify judicial sanction." See, also, Id., 39 Iowa, 380. Such meetings should be conducted fairly and with due regard to the rights of all those entitled to participate therein. Holding the polls open for only fifteen minutes, and refusing to permit electors to vote, and closing the polls before they could vote, are acts which merit the condemnation of every good citizen. Such an election is one only in name, and results in imposing burdens on the taxpayer without affording him the

opportunity guaranteed by law to all legal and qualified electors of giving effect to their opinions.

V. It is said by appellees that plaintiff's remedy was to appeal to the county superintendent. The contention does not seem to be seriously urged, and indeed, it is inconceivable how it could be, in face of the facts disclosed by this record. *Perkins v. Board of Directors*, 56 Iowa, 478 (9 N. W. Rep. 356). The section of the Code relied upon reads: "Any person aggrieved by any decision or order of the district board of directors, in matter of law or of fact, may, within thirty days after the rendition of such decision, or the making of such order, appeal therefrom to the county superintendent of the proper county." Code, section 1829. The matter presented in this case is not such a decision or order as is contemplated by the statute. If, in such case, one was compelled to appeal to the county superintendent, the wrong sought to be prevented would always be accomplished, and a party would be practically remediless. Here is involved, not a matter of discretion, but of power, under the law, and of fraud practiced, whereby a tax is voted which will become a charge upon the taxpayers' property. Surely, such a case is not within the spirit or letter of the statute relied upon. We are satisfied that the learned district court exceeded its discretion in dissolving or modifying the injunctions. They should have been continued until a full hearing of the case could be had on its merits.—REVERSED.