LESTER DRENNEN, Appellant, v. E. S. OLMSTEAD, Auditor of Polk County et al., Appellees.

No. 44102.

NOVEMBER 16, 1937.

REHEARING DENIED MARCH 18, 1938.

Mark C. Reno and Hubert Utterback, for appellant.

Carl Burkman, County Attorney, and Howard Hall, for appellees.

RICHARDS, J.—On October 30, 1936, plaintiff filed his petition in equity, making parties defendant the county auditor of Polk County and the election judges of a certain precinct in that county. The petition alleged that plaintiff brought the action as a resident, citizen, qualified voter, and taxpayer of said county. It set out as the basis of plaintiff's complaint that 187 inmates of the Polk County Home had made application for ballots to be cast by them under the absent voters law, and having been furnished by the county auditor with ballots for that purpose, the 187 inmates had marked and deposited the ballots with the county auditor, as votes to be cast by the election judges in the general election to be held on November 3, 1936. The petition alleged that these 187 persons had not expected to be absent on election day from Polk County and had not expected through illness or physical disabilities to be prevented from personally going to the polls and voting on election day. For that reason plaintiff alleged that the purported ballots were illegally deposited with the county auditor to be cast in said election and that the 187 persons should be permitted to go to the polls and vote by secret ballot at the regular polling place. On account of said matters plaintiff prayed that defendant county auditor be enjoined from mailing or delivering the ballots to the defendant election judges and that the defendant election judges be enjoined from opening the envelopes containing the ballots and removing the ballots and depositing them in the ballot boxes, and from registering the same on the voting machines and from entering the names of the voters in the poll book.

The matter was heard on the morning of November 2, 1936. The evidence fully established the allegations of the petition. It clearly appeared that these inmates not only would be in the county and able to go to the polls but preferred so to do rather than vote under the absent voters law. The applications for the ballots had been brought to the county home and there signed up in a wholesale manner at the instigation of some person or persons other than these inmates. The district court dismissed the petition and entered judgment against plaintiff from which he appeals.

The absent voters law, chapter 44, Code 1935 (section 927 et seq.,) sets out the form of application for the ballot. In this form is prescribed an affidavit the applicant must make

that he cannot be at the polls on election day on account of business, illness or physical disability. Upon receipt of the application it is the duty of the county auditor to furnish the applicant an official ballot. Thereupon the voter marks his ballot and returns it to the auditor accompanied by another affidavit in which he makes oath that he will be prevented from attending the polls on the day of election on account of absence from the county or physical disability. Upon receipt of the ballot and accompanying affidavit the auditor preserves it in a prescribed manner and in due time makes delivery of the ballot and affidavit to the judges of election of the precinct in which the elector resides. It then becomes a duty of the judges of the election, at any time between the opening and closing of the polls, to open the outer envelope, announce the absent or disabled voter's name, and compare the signature upon the application with the signature upon the affidavit that accompanied the ballot when it was returned to the auditor. In case the judges find that the signatures correspond, that the applicant is a duly qualified elector of the precinct, and that he has not voted in person at the election, they shall take out the ballot enclosed and after endorsing the same in like manner as other ballots shall deposit same in the proper box and enter the voter's name in the poll book, the same as if he had been present and had voted in person. The vote of any such absent voter may be challenged for cause and the judges of election must determine the legality of such ballot as in other cases. It is also provided in said chapter 44 that, in case the affidavit is found to be insufficient, or if it is found that the signatures do not correspond, or that the applicant is not a duly qualified elector in such precinct, or that the ballot envelope is open, or has been opened and resealed, or that the ballot envelope contains more than one ballot of any one kind, or that said voter has voted in person, then such vote shall not be accepted or counted.

That there was a wholesale violation of the absent voters law clearly appears. Appellees submit no argument to the contrary. Perjury and subornation of perjury are suggested by the record. The proposition that appellees do present, and the one evidently adopted by the trial court, is that the situation that existed could not be remedied in a court of equity by a writ of injunction such as plaintiff prayed.

In considering this proposition of defendants which raises the only controversy on this appeal, it will be noted that the petition alleges no wrongdoing by the county auditor or by the judges of election. Plaintiff freely admits in argument that in the petition there is no complaint of any failure of duty on part of the defendant officials. The specific thing sought to be enjoined was the delivery of the ballots by the county auditor to the judges of election, and the opening of the envelopes containing the ballots, the depositing of the ballots in the ballot boxes, and the entering of the names of the voters in the poll book, by the judges of election. From what is already stated it is apparent that these acts sought to be enjoined were all statutory duties imposed on these officers by the absent voters law. It is also of importance that this law by its provisions, and the general election laws that are operative with reference to absent voters ballots, furnished a complete procedure that, if followed, would result in a final adjudication as to whether these ballots should be cast as lawful votes. It is true that, if the election judges should not reject but should count the ballots, a contest of the election might be the necessary mode of determination of the status of these ballots as legal votes. But the point is that the legislature has specifically provided the means and the method of attacking the ballots in question. Plaintiff seeks the same end in a different manner, in equity, by injunction. It is true that an injunction may be obtained as an independent remedy in an action by equity proceeding, in all cases where such relief would have been granted in equity previous to the adoption of the Code, section 12512, Code 1935. But the writ is not exercised indiscriminately. This court has quoted with approval the general rule that if, where from any defect of the common law, want of foresight in the parties, or other mistake or accident, there would be a failure of justice, it is the duty of a court of equity to interfere and supply the defect or furnish the remedy. Preston v. Daniels, 2 G. Greene 536. It is sometimes said in different words that equity will not take cognizance if there is available a plain, speedy and adequate remedy at law. Council Bluffs v. Stewart, 51 Iowa 385, 1 N. W. 628. In the case before us we are constrained to hold that the legislature had provided a plain, speedy and adequate procedure and remedy in lieu of which injunction as an independent remedy in equity may not be substituted. Appellant, as avoid-

ing such conclusion points out that plaintiff is a taxpayer and that under the statutory procedure, especially if a contest of the election becomes a part of the necessary proceedings, a large public expense would be incurred to the personal injury of plaintiff as a taxpayer. In the case of Cascaden v. City of Waterloo, 106 Iowa 673, 77 N. W. 333, we recognized the right of a taxpayer to enjoin the mayor and council of defendant city from holding an election in a ward of said city which ward had been illegally created. The reason was that the election would be illegal and in being held the public revenue would be illegally expended. It was held that the case was clearly within the rule that entitles a taxpayer to maintain an action to restrain an illegal disposal of the corporate funds. But in the case at bar the complaint is not of illegality of the proceedings the county auditor and judges of election were about to pursue. The real complaint is that this impending method of procedure provided by the legislature, which eventually would determine the effectiveness of these ballots, would incur a large expense, injurious to plaintiff as a taxpayer. Obviously this was a matter in which the legislature has exercised its judgment and discretion, the wisdom of which a court of equity will not weigh and assume jurisdiction if it should appear that some other procedure might be expectedly less onerous on the taxpayers. We are constrained to hold that the trial court rightly dismissed plaintiff's petition. The conclusion is quite consistent with the reticence on the part of courts of chancery to extend its one-man power of injunction to political affairs. U. S. Standard Voting Machine Co. v. Hobson, 132 Iowa 38, 109 N. W. 458, 7 L. R. A. 512, 119 Am. St. Rep. 539, 10 Ann. Cas. 972.

The case is affirmed.—Affirmed.

HAMILTON, C. J., and KINTZINGER, DONEGAN, SAGER, PARSONS, STIGER, MITCHELL, and ANDERSON, JJ., concur.