ARKANSAS-MISSOURI POWER CORPORATION, a Corporation, and FRED HORNSEY, ROBERT HALE, HOWARD A. WOLF, P. T. MAXWELL, GEORGE CARR, J. S. HIGGINS, and C. R. CROW, Appellants, v. CITY OF POTOSI, MISSOURI, a Municipal Corporation, G. F. CRESSWELL, Mayor of the City of Potosi, Missouri, ABRAHAM NAJIM, BRUCE MILES, H. S. HARTZELL and HARRY BRANAUGH, Members of the Board of Aldermen of the City of Potosi, Missouri, LETCHER J. HIGGINBOTHAM, City Clerk of the City of Potosi, Missouri, and BAUM-BERNHEIMER COMPANY, a Corporation.—No. 39718.—196 S. W. (2d) 152.

Division Two, September 9, 1946.

*Patterson, Chastain & Smith* and *Samuel Richeson* for appellants.

*S. G. Nipper, M. C. Matthes* and *J. W. Thurman* for respondents.

358

 BOHLING, C.—This is a suit in equity to enjoin the issuance, registration, and purchase of $60,000 of general obligation bonds of the City of Potosi, Missouri, the object of said bond issue being the erection or purchase of an electric light plant. A motion by defendants to dismiss plaintiffs' petition was sustained and plaintiffs, in due course, appealed.

Plaintiffs' first amended petition, on which the case was submitted, alleged that plaintiffs were resident tax-paying citizens of and owned real and personal property in said City; that said City was a city of the fourth class; that the individual defendants were officials of said City (the Mayor, Members of the Board of Aldermen, the City Clerk), and that said municipality and the corporate defendant, Baum-Bernheimer Company, had agreed in March, 1944, to sell and purchase, respectively, said bonds. The petition alleged that said City on September 4, 1944, passed Ordinance No. 219, which called for a special election to be held on October 17, 1944, to authorize the issuance of said bonds and, among other things, designated the polling places and appointed the judges and clerks for said election in each of the two wards of said City.

Plaintiffs' petition next alleged "that no election was ever held in said city pursuant to said Ordinance No. 219" and therefore said City and its officers "are wholly without authority to issue said bonds." However it did not stop there but, proceeding further and anticipating defenses, disclosed that an election was held in said City on October 17, 1944; that only one of the four judges and only two of the four clerks named in said Ordinance No. 219 functioned as judges and clerks, respectively, of said election, and that three unauthorized persons purporting to act as judges and two unauthorized persons purporting to act as clerks at said election joined in certifying to the city authorities "that they had held an election at the County Court Room for the First Ward and at the Elsey-Dickey Garage for the Second Ward, and that more than two-thirds of the qualified voters voting as said places voted in favor of said proposition"; that said

certification is wholly void because said persons acted as judges and clerks without being named in said ordinance, they being without authority to so act.

Plaintiffs also alleged that said election was a nullity because it was not held at the places appointed by said ordinance in that the county court room at the Washington county courthouse was the polling place for the First ward of said City whereas the office of the Circuit Clerk of the Circuit Court in said courthouse had been appointed as the polling place for said ward; that the Elsey-Dickey garage. on High street was the polling place for the Second ward of said City whereas the A. Najim garage, one block distant and across the street, had been appointed as the polling place for said ward; and that qualified voters had not voted on account of being unable to find the polling place.

Plaintiffs' petition contains other charges. They are not urged here, we understand, because they "cannot be made the basis of an election contest," quoting plaintiffs' brief. Such charges were briefly to the effect unqualified persons voted—nonresidents and minors; the judges were guilty of misconduct; the voters were intimidated; that a secret ballot and ballot boxes were not provided; and that the polling places were not kept open until 7 P. M. The foregoing is sufficient for the issues presented.

Plaintiffs point to the allegation "that no election was ever held in said City pursuant to said Ordinance No. 219" and assert a cause of action for equitable jurisdiction was stated. A pleading is examined and considered as a whole in determining its sufficiency. State ex rel. v. Dew (Banc), 312 Mo. 300, 319, 279 S. W. 65, 71(3, 4); Phillips v. Thompson, 225 Mo. App. 859, 864, 35 S. W. 2d 382, 385(1); 41 Am. Jur. 337, Sec. 70. Plaintiffs' petition did not stop with the above allegation but proceeded to modify the same by stating plaintiffs' case on the facts. Defendants' motion to dismiss did not admit the truth of the quoted allegation. Plaintiffs recognize this as they stress here the failure of those named in the ordinance as judges to serve and voting in one of the precincts about a block away and across the street from the place designated in the ordinance as the real grounds for injunctive relief. Their brief states they would not be here had the judges named in the ordinance certified to the results and that the election was held at the designated places. In reality they attack the election for irregularities occurring during its progress.

Plaintiffs stress an observation in Missouri Electric Power Co. v. City of Mountain Grove, 352 Mo. 262, 271, 176 S. W. 2d 612, 617 (13); as authorizing the instant suit; viz.: "But if, under the guise of an election which is really *unauthorized by law*, the property or person of a citizen is imperiled, equity will interfere." The statment, we think, is clear enough, conforms with the holdings

in the cases cited, as well as the holdings of other cases in plaintiffs' brief; that is, interference by a court of equity is proper where the election would be a nullity and, consequently, useless. In Baum v. City of St. Louis, 343 Mo. 738, 123 S. W. 2d 48, a prerequisite to the passage of a valid ordinance was lacking; viz.: compliance with the charter requirement that the Board of Public Service of the City recommend the passage of the proposed ordinance. Thornburgh v. School Dist. No. 3, 175 Mo. 12, 25(II), 28, 75 S. W. 81, 84(2), 83, is to like effect. The statutes vested in the Board of School Directors alone the authority to order a meeting of the voters and to designate the day on which to hold an election to approve the bonds involved. The records of the Directors failed to disclose such an order. Their failure to discharge this statutory prerequisite caused the election to be a nullity, and was not cured by the possibility that the Clerk of the Board under the record made ordered the election and designated the date therefor. What caused the election involved in Gaston v. Lamkin, 115 Mo. 20, 36, 21 S. W. 1100, 1104, also cited by plaintiffs, to be a nullity was the holding of the election in total disregard of the only statutory provisions under which it was authorized to be held.

Equity generally affords redress in cases of fraud but an exception exists where an exercise of political power is involved, it being considered to lie outside the sphere of equity; and for this reason a charge of fraud in the conduct of an election has been held insufficient to vest a chancery court with jurisdiction over an election contest.

"We have consistently held, upon a consideration of the common-law doctrine, the provisions of the Constitution of this state, and the absence of any legislative provisions for contest of an election of the character here involved, that a court of equity is without jurisdiction to set aside the result of a bond election on the grounds that the election was fraudulently conducted." State ex rel. v. Drain (Banc), 335 Mo. 741, 747, 73 S. W. 2d 804, 807(5). See Missouri Electric Power Co. v. Mountain Grove, 352 Mo. 262, 270, 176 S. W. 2d 612, 616, 617; Long v. Consolidated School District, 331 Mo. 302, 53 S. W. 2d 867, citing earlier cases.

In holding injunction would not lie to contest the vote on a special election for bonds for paying and funding county indebtedness under allegations charging "oppression, intimidation, coercion, brutalities, false counts, and false certification; that the election in a majority of the precincts was tainted, saturated, and vitiated by fraud" et cetera, State ex rel. v. Waltner (Banc), 340 Mo. 137, 142, 100 S. W. 2d 272, 274, pointed out that State ex rel. v. Speer, 284 Mo. 45, 54, 223 S. W. 655, 657, 659, "holds 'the Legislature never has intended there should be a judicial inquiry concerning the legality of the voting in a county bond election,' or another kind of election except where

a statute authorizes it; and that 'the right of citizens and taxpayers to honest elections is meant to be protected by the judges who supervise the voting at the polls.' If it were otherwise, protracted litigation in courts of equity contesting bond elections might greatly delay and sometimes even defeat state, county, and municipal financing. The law affords other means of uncovering fraud in elections.''

■ State ex rel. City of Memphis v. Hackman (Banc), 273 Mo. 670, 694(III), 700(IX), 202 S. W. 7, 13(6), 15(12, 13), involved an issue of $25,000 of municipal bonds for the erection of an electric light plant. It was there considered, among other things that a failure of the judges to take the oath or to sign the poll books as required by statute would not invalidate the election. Also, a designation of polling places as "the usual voting places in each ward in said city" was considered an irregularity. (Other contentions within the allegations of the instant petition but not urged here were also adversely ruled.) In Bowers v. Smith, 111 Mo. 45, 61(III), 84(II), 20 S. W. 101, 105(3), 113(2), 16 L. R. A. 754, 33 Am. St. Rep. 491, the appointment of twelve instead of six judges and providing two voting places seventy-five feet apart was considered an irregularity ■ not invalidating the election. It is common knowledge that election precincts in cities of the fourth class are small territorially and that the polling places therein are easily found, unless they are concealed or the voters actively misled. State ex rel. v. Hackman, supra; O'Laughlin v. Kirkwood, 107 Mo. App. 302, 319, 81 S. W. 512, 518. Potosi is a city of about 2,000 inhabitants, smaller than Kirkwood at the time (1903) involved in the O'Laughlin case.

■ Plaintiffs say they think they may maintain the suit under Sec. 3306, R. S. 1939, of Article 6 of Chapter 16, on "Registration of Bonds" and providing, in part, that interested taxpayers of municipalities may by injunction "prevent the registration of any bonds, alleged to be illegally issued or funded under any of the provisions of this article." This provision has been on the statutes of this State as far back as 1889. See R. S. 1889, Sec. 847. Plaintiffs do not direct our attention to any instance wherein it has been applied to issues similar to those now presented. We think, as stated upon an analogous issue in State ex rel. v. Waltner (Banc), 340 Mo. 137, 144, 100 S. W. 2d 272, 276, that the Missouri cases are and the understanding of the bench and bar of this State is that the financing arrangements of Missouri counties, cities and other political subdivisions cannot be "interrupted by proceedings in equity enjoining the issuance of bonds upon a challenge of the vote by which they were authorized. The statutes invoked refer only to the regularity of the proceedings underlying the bonds, and to the constitutional limitations upon such indebtedness.

■ Missouri cities of the fourth class may issue bonds for the erection or purchase of electric light plants under authority conferred

at an election therefor. R. S. 1939, Sec. 7180. It is contemplated that the judges of election be appointed and the polling places be provided by the board of aldermen by ordinance or otherwise. R. S. 1939, Secs. 7369 and 7099. The issue is one of jurisdiction of the court and the sufficiency of the allegations of the petition to establish such jurisdiction. It is not the sufficiency of the allegations to state a cause of action for fraud if the court has jurisdiction. The board of aldermen of the city of Potosi named the judges and specified the polling places for the election. The issues presented strike at irregularities occurring in the conduction of that election; an election authorized by law and not, as plaintiffs contend, at an election unauthorized by law or vitiated by a failure to observe some mandatory prerequisite giving a court of equity jurisdiction. Plaintiffs' authorities do not establish that the matters urged embrace a failure to comply with some essential prerequisite to a lawful election authorizing the issuance of the bonds.

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.