Dale L. Patton et al., appellants, v. Independent School
District of Coggon et al., appellees.

No. 47867.

(Reported in 48 N.W.2d 803)

July 10, 1951.

942

Williamson, Pettit & Williamson, of Manchester, and Elliott, Shuttleworth & Ingersoll, of Cedar Rapids, for appellants.

D. E. Smith and Donnelly, Lynch, Lynch & Dallas, all of Cedar Rapids, for appellees.

MULRONEY, J.—The seven persons who brought this action in equity alleged in their petition that they were taxpayers and qualified electors in the Independent School District of Coggon, Linn and Delaware Counties, and that they brought this suit in their own behalf and in behalf of all other persons similarly situated. The suit was against the school district and the board of directors thereof and the petition alleged that "a special school election" had been held on June 21, 1950, wherein a proposition to issue bonds in an amount not to exceed $150,000 for the purpose of carrying out a school building program had been submitted to the voters. The petition alleged that the election judges had reported the returns of the election were as follows: 570 ballots cast, 335 for said proposition, 220 against said proposition, and 15 ballots spoiled and not counted.

The above return showed that the proposition carried by the requisite 60 per cent of the total vote cast but the petition went on to allege that nine named persons, who were not qualified electors in the district, voted illegally in this election; that some of the ballots not counted, as being spoiled, should have been counted; and certain other irregularities occurred in the canvassing of the ballots and the reception of absentee ballots. The prayer was for a judgment declaring the proposition failed to carry and an injunction against the defendants from issuing or selling the bonds.

The defendants filed a motion to dismiss the petition on the ground that section 277.22 and chapters 57 and 62, Code, 1950, provide for the procedure for contesting this election, and therefore plaintiffs had an adequate remedy at law and their petition in equity should be dismissed. The trial court sustained the motion and plaintiffs appeal.

I. The first statute involved is section 277.22, Code, 1950, which provides: "School elections may be contested as provided by law for the contesting of other elections."

It will be seen that the above statute is what is called a general reference statute. 50 Am. Jur., Statutes, section 37. It incorporates by reference the general statutory law for contesting other elections. The general provisions for contesting elections are found in chapters 57 to 62, Code, 1950, inclusive. All of the provisions of these chapters seem to contemplate contests over elective offices.

Section 57.1 states that "the election of any person to any county office, or to a seat in either branch of the general assembly, may be contested by any person eligible to such office * * *."

Section 57.2 provides for the withholding of the certificate of election if notice of the contest is filed before the certificate is delivered.

Section 57.3 defines the term "incumbent" to mean the person the canvassers declare elected.

Section 57.6 provides: "All the provisions of the chapter in relation to contested elections of county officers shall be applicable, as near as may be, to contested elections for other offices, except as herein otherwise provided * * *."

The chapter on contesting elections of county officers is chapter 62. It is plain that all of the twenty-five sections in this chapter contemplate the contest of an election to public office. The statutes speak of the "contestant" who must file a statement of contest "within twenty days after the day when the incumbent was declared elected." The written statement of contestant's intention to contest must state "that he or she is qualified to hold such office." Section 62.5. The contestant must file a bond conditioned to pay all costs in case the election be confirmed. Section 62.6. And if the election be set aside judgment for costs is to be entered against the incumbent. Section 62.24. The judgment of the contest court is to pronounce whether "incumbent or any other person" was duly elected and if the judgment be that "no person" was elected the election is to be set aside. Section 62.18.

We need not call attention to other sections of the election contest statutes. It is sufficient to state that they all show they were intended to apply to the contest of an election of officers.

We go back now to section 277.22 providing that school elections may be contested. The question here is whether it was the intent of the legislature to bring special school elections on

propositions within the purview of the contest laws. There is room for judicial interpretation because the term "election" does not always have a fixed meaning. Sometimes it signifies any choice of the voters and sometimes it is confined to the choice of. persons for public office. Seaman v. Baughman, 82 Iowa 216, 47 N.W. 1091, 11 L.R.A. 354.

In Klutts v. Jones, 20 N. M. 230, 243, 148 P. 494, 498, it was held: "That an election for the purpose of determining whether bonds of a school district shall be issued for the construction of a schoolhouse is a 'school election' can hardly be doubted."

We have the setting of section 277.22 in the chapter relating to school elections. The first two sections of chapter 277 provide for the regular and special school elections. Propositions and questions can be submitted to the voters at regular elections when candidates for office are chosen or at special elections when there are no candidates for office. The succeeding sections, before section 277.22 is reached, outline the machinery for holding school elections and the canvassing of the votes and it is the same for general as for special elections. Several times the statutes speak of "a school election" or "school elections" and it is clear that the term is meant to include regular and special school elections when the legislature is providing for the manner of holding school elections, and voting and canvassing the returns. Appellees argue from all this that the legislature must have meant to include special school elections by its use of the term "school elections" in section 277.22.

This particular section with respect to contesting school elections entered the law with the Acts of the Fortieth Extra General Assembly which amended, revised and codified much of the then existing school election laws. It was the last sentence of S. F. 101, section 14, Acts of the Fortieth Extra General Assembly (chapter 70, section 14, Unpublished Acts 40th Ex. G.A.). This section 14 had to do with the judges, the ballot box, the poll book, and the judges' return of the election result. Section 14 of S. F. 101, Acts of 40th Ex. G.A., appears in the Code of 1924 as section 4209. The last two sentences of the section read: "The board shall provide the necessary ballot box or voting machine and poll book for each precinct, and the judges shall make and certify a return to the secretary of the corporation of the votes cast for officers and

upon each question submitted. School elections may be contested as provided by law for the contesting of other elections."

It is significant that this entire Senate File 101 of the Fortieth Extra General Assembly merely revised and codified the school election laws with respect to the regular or annual school election held in March of each year when directors and officers are elected. There was at that time in the law, section 2750, Code, 1897, which provided the board of directors could call a special meeting to vote a schoolhouse tax, etc., and this is the antecedent statute for the present section 277.2, Code, 1950, providing for special school elections.

The next revision and codification of the school election laws was undertaken by the Forty-third General Assembly, chapter 100. Here there was specific legislation on special school elections. Section 2 of the above chapter is the present section 277.2 and the provision with respect to contesting was removed from the section that had to do with election judges and made into a separate section. Here too it is a little significant that this contesting section was inserted to follow the provision with respect to a tie vote for an elective school office. Sections 21 and 22 of chapter 100, Acts of the Forty-third General Assembly, are the present 277.21 and 277.22 of the Code of 1950.

We have then a legislative history of section 277.22, which originates with S. F. 101, Acts of the Fortieth Extra General Assembly, which only legislated with respect to the regular school election when elective offices were filled. Obviously the term "school elections may be contested" as there used meant regular school elections when school district officers and directors are elected. Later when the Forty-third General Assembly legislated with respect to both general and special school elections the provision for contest was removed from the general section with respect to election judges and placed in a separate section to follow the tie vote for elective school office section. Such a legislative history is probably not strong either way but at least it is some indication that by the term "school elections" the legislature meant the regular elections when officers are elected.

■ If·the method "provided by law for the contesting of other elections" were even remotely adaptable to a special school election we would ignore this history. But when you add to this

legislative history the fact that each requirement and each step in the contest procedure is utterly foreign to a procedure for a taxpayer's challenge to the legality of an election on a proposition involving a public debt, we are compelled to hold that the legislature meant the school elections that can be contested under section 277.22 are regular school elections for the election of directors and officers. The reference to the election contest statutes is a direction to add these statutes to section 277.22. It is as if the latter section read: School elections may be contested by any person eligible to such office (section 57.1) filing a written statement within twenty days after the incumbent was declared elected (section 62.5) and a bond conditioned to pay costs if the election be confirmed (section 62.6) etc. By reading into section 277.22 all of the election contest statutes, it appears clear that the school elections intended to be subject to contest were the regular school elections to fill elective offices.

Both sides cite cases from other jurisdictions but they are not of much help. Appellees cite Truelson v. City of Duluth, 60 Minn. 132, 61 N.W. 911, and Treat v. Morris, 25 S. D. 615, 127 N.W. 554. They are cases where it was held elections where questions were submitted could be contested under election contest statutes. But in the Truelson case it seemed to be admitted the election contest statutes—which are not set out—would be broad enough to cover a bond election, and the only question was whether they applied to a city which was not specifically mentioned. In the Treat case the statute gave any elector the right to contest the validity of any election.

And our own decisions are likewise of little aid. We have one opinion where such an election was contested under the election contest statutes but no question of procedure was raised. We have many decisions where similar contests were decided in equity, the remedy plaintiffs seek to invoke here, but they will be cited in the next division of this opinion. We find only one such case decided since section 277.22 was adopted.

In Willis v. Consolidated Ind. Sch. Dist., 210 Iowa 391, 392, 227 N.W. 532, 533, a special school election, voting on the proposition: "Shall the * * * district * * * be dissolved" was contested, apparently under the contest statutes and an appeal taken from the contest court to the district court. As stated, no question of

the procedure was raised. In Mack v. Independent Sch. Dist., 200 Iowa 1190, 206 N.W. 145, an action to enjoin the issuance of school bonds voted at a special election was brought on the ground the election was void because more than one director acted as a judge of election. The judgment for defendant district was affirmed without mention being made of the propriety of the procedure.

It is our conclusion that section 277.22 does not provide for the contest of a special school election under the general election contest statutes. It would take a major revision to adapt the election contest statutes to a procedure for challenging a bond election. Such revision should be undertaken by the legislature, not the courts.

Il. There was another ground asserted in defendants' motion to dismiss. It is: "That in no event would a proceeding in equity be the proper proceeding to determine that the proposition submitted at the election referred to in plaintiffs' petition did not receive sufficient votes to carry." Defendants support this ground by an argument that plaintiffs were not entitled to equitable relief, largely because of the special statutory remedy for contesting this election, citing such cases as Drennen v. Olmstead, 224 Iowa 85, 275 N.W. 884. But we conceive the question raised by this ground is whether an independent remedy in equity exists in a case like this, in the absence of a statutory right to contest such an election. We need not decide the question as to whether the existence of statutory contest procedure would negative the right to equitable relief. We have already held there was no statutory contest procedure for such an election.

The complete answer lies in the many decisions of this court in similar cases. In Hinkle v. Saddler, 97 Iowa 526, 66 N.W. 765, such an injunction was sought to restrain a school board from certifying a tax alleged to have been voted at a school meeting. It was there alleged that certain qualified persons had been refused the right to vote and that there were more votes cast than persons who voted. The opinion reviews the evidence of the alleged election irregularities and holds the temporary injunction should not have been dissolved.

In Powers v. Harten, 183 Iowa 764, 167 N.W. 693, an action in equity was brought by a taxpayer to have the establishment of

a consolidated school district adjudged void because illegal votes were cast at the election upon the proposition for consolidation. The evidence as to the alleged illegal voting was reviewed and the judgment for defendants affirmed.

In Chambers v. Board of Directors, 172 Iowa 340, 154 N.W. 581, fifty-one taxpayers in a school district sought to enjoin the district from issuing school bonds on grounds, among others, that at the election where the proposition to issue bonds was voted upon there were various irregularities such as more than one elector in a voting booth at the same time, electors handed unfolded ballots to the judges, a director and elector acted as judges instead of the president and an elector, and the polls were kept open longer than directed by statute. The opinion reviews the evidence of the alleged irregularities and holds it insufficient to establish prejudice.

In Taylor v. Independent Sch. Dist., 181 Iowa 544, 164 N.W. 878, plaintiffs, residents of a school district, sought and obtained injunctive relief preventing consolidation on the ground that the consolidation election was void because of the acceptance of illegal votes. The opinion reviews the evidence and passes on the merits and affirms the trial court's decree.

See also Strawn v. Independent Sch. Dist., 200 Iowa 357, 204 N.W. 423; Seaman v. Baughman, 82 Iowa 216, 47 N.W. 1091, 11 L.R.A. 354; Calahan v. Handsaker, 133 Iowa 622, 111 N.W. 22; and Locker v. Keiler, 110 Iowa 707, 80 N.W. 433. In none of these cases was the right of equitable jurisdiction challenged but the granting of such equitable relief as here sought in a long line of cases indicates no serious question of equity jurisdiction is present in this type of case. When a right of taxpayers to invoke the interposition of a court of equity has been recognized in numerous cases it is strong indication of a settled basis of equity jurisdiction even though the question of that court's jurisdiction was not specifically raised in those cases. And we can see no good reason why the equity court should not have jurisdiction over such a suit. After all the action is simply to enjoin the illegal issuance of bonds which will impose an illegal tax burden on plaintiffs' property. In the absence of other remedy it has always been held that the writ of injunction to restrain the issuance of

the bonds is the appropriate relief for taxpayers to seek. 52 Am. Jur., Taxpayer's Actions, section 12.

The rule that courts of equity have no inherent power to try election contests applies to elections for public office where political questions are involved. 29 C. J. S., Elections, section 248; 18 Am. Jur., Elections, section 272. There seems to be some authority that bond elections lie outside the sphere of equity. See Arkansas-Missouri Power Corp. v. City of Potosi, 355 Mo. 356, 196 S.W.2d 152, and cases there cited. But the majority rule seems to be that, in the absence of another statutory remedy, a court of equity would not be without jurisdiction to grant relief to a taxpayer whose rights are affected by an election that decided some local question even though to grant the relief it must decide an election contest.

This case is much similar to Ashley v. Richard, 32 Idaho 551, 560, 185 P. 1076, 1079. There, as here, the petition seeking to restrain a school district from issuing bonds alleged certain persons who voted in the special bond-issue election were not qualified voters, and that other irregularities occurred in the election. The court held the statutory election contest procedure did not apply to such an election and went on to hold that the action was properly cognizable in equity, stating:

"The authorities are uniform in holding that courts of equity will prevent municipal corporations from issuing bonds which are unauthorized, or are without or in excess of the power of the municipality to issue. In the absence of any other remedy being provided to prevent violation of the constitutional provision above-quoted, this action may be maintained to prevent the unauthorized issuance of the bonds of the district, even though an election contest is involved in the action in order to determine the lack of authority to issue the bonds."

In Marsden v. Harlocker, 48 Or. 90, 98, 85 P. 328, 331, it is stated:

"The rule is quite general that equity will not intervene when an adequate remedy is afforded at law, and hence in controversies involving the right to an office an injunction will not usually lie, because the parties have a complete remedy by stat-

950

ute to contest an election or by quo warranto to determine the right resulting therefrom. Where, however, an election relates to the adoption or rejection of some local question and does not include an office, it has been held in some jurisdictions, in the absence of any statute authorizing such proceedings, that equity would intervene to determine a contested election because of the irregularities or fraud in the conduct thereof."

To the same effect are Appalachian Electric Power Co. v. Town of Galax, 173 Va. 329, 4 S.E.2d 390; Village of Morgan Park v. City of Chicago, 255 Ill. 190, 99 N.E. 388; and Abbott v. Iowa City, 224 Iowa 698, 277 N.W. 437.

For the reasons stated the trial court's ruling on defendants' motion to dismiss and the judgment rendered thereon are reversed and the cause is remanded for further proceedings.—Reversed and remanded:

OLIVER, C. J., and GARFIELD, WENNERSTRUM, SMITH, and HAYS, JJ., concur.

THOMPSON, J., takes no part.